John P. SHANNON, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, United States Department of Energy, United States Department of Energy Office of the Inspector General and the United States Office of Personnel Management, Defendants–Appellees.

No. 98–6153.

United States Court of Appeals, Second Circuit.

Argued May 13, 1999.

Decided July 29, 1999.

Ronald G. Dunn, Gleason, Dunn, Walsh & O'Shea, Albany, NY, for plaintiff-appellant.

Carl E. Goldfarb, Civil Division, U.S. Department of Justice, Washington, D.C. (Frank Hunger, Assistant Attorney General, Barbara C. Biddle, Civil Division, U.S. Department of Justice, Washington, D.C., on the brief), for defendants-appellees United States Department of Energy, United States Department of Energy Office of the Inspector General and United States Office of Personnel Management.

Vincent Alfieri, Robinson Silverman Pearce Aronsohn & Berman LLP, New York, NY (Miriam Rena Spiro, of counsel, on the brief), for defendant-appellee General Electric Company.

Before: MESKILL and SOTOMAYOR, Circuit Judges.*

SOTOMAYOR, Circuit Judge:

Plaintiff-appellant John P. Shannon appeals from a final judgment of the United States District Court for the Northern District of New York (Scullin, J.) dismissing his action for failure to prosecute. Shannon also seeks to appeal an interlocutory order in which the district court denied him leave to amend his complaint and granted summary judgment in favor of defendant General Electric Company ("GE"). We hold that this interlocutory order does not merge with the final judgment dismissing the action for failure to prosecute and therefore is not appealable. Finding no abuse of discretion in the district court's dismissal of Shannon's lawsuit, we affirm.

## BACKGROUND

### I. Underlying Facts and Administrative Proceedings

This lawsuit arises out of Shannon's alleged whistleblowing activities at the Knolls Atomic Power Laboratory ("KAPL") in Schenectady, New York, where Shannon worked from 1959 until 1990. KAPL conducts classified nuclear research, development and design for the United States Naval Nuclear Propulsion Program. The laboratory is owned by the United States Department of Energy ("DOE") and is operated by GE pursuant to a contract with DOE. In 1985, Shannon managed the Nuclear Criticality Safety/Industrial Safety and Industrial Hygiene Department at KAPL.

Shannon alleges that on November 26, 1985, his department published a report (the "Safety Inspection Report") that was "very critical" of the health and safety conditions at one of KAPL's facilities. In response to this report, the Fuel Handling and Storage Safety Council ("FHSSC") audited his department in December 1985. Shannon claims that "[t]he FHSSC audit was intentionally manipulated to manufacture a negative impression of Shannon and his [d]epartment in retaliation for issuing the November 26, 1985 Safety Inspection Report." Shannon further maintains that as a result of the FHSSC audit, he was demoted, first to the position of Lead Engineer Nuclear Criticality Safety and later to the entry-level position of Senior Nuclear Engineer—D2W Nuclear Design.

On October 27, 1988, Shannon filed an administrative discrimination complaint

---

* Judge Fred I. Parker recused himself from this case after oral argument. The two remaining members of the panel, being in agreement as to the outcome, have decided the appeal. See 2d Cir. R. § 0.14(b).

with the Schenectady Naval Reactors ("SNR"), DOE's office at KAPL, alleging that GE had retaliated against him for reporting health and safety deficiencies at KAPL in the Safety Inspection Report. After investigating Shannon's complaint, SNR issued a report (the "SNR Report") finding no basis for Shannon's allegations. SNR informed Shannon of this decision on March 27, 1989, and Shannon appealed to the DOE Office of Hearings and Appeals. The DOE Office of the Inspector General ("DOE–IG") thereafter investigated Shannon's allegations and compiled an Abstract Report of Inspection (the "Abstract Report"), which was sent to the Secretary of Energy on September 7, 1990. On May 3, 1991, DOE issued a final decision concluding that Shannon had not been the subject of discrimination.

## II. *District Court Proceedings*

On May 28, 1992, Shannon filed a *Bivens* action in federal court alleging that GE's actions violated his "civil and constitutional rights," and that DOE and DOE–IG (collectively, the "federal defendants") "participated in the denial of [his] constitutional rights." *See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing a private cause of action for money damages against federal officials who violate the Fourth Amendment). Shannon also claimed that GE and the federal defendants violated the Privacy Act of 1974, 5 U.S.C.A. § 552a (West 1996 & Supp.1999) (the "Privacy Act"), by, among other things, improperly disclosing various confidential records relating to his administrative discrimination complaint.[1] For example, Shannon assert-

ed that the federal defendants disclosed the SNR Report and the Abstract Report to GE without his consent. Shannon also complained that a "spokesman from KAPL" leaked information about the Abstract Report to a local newspaper, and that GE issued a press release disclosing the results of the SNR Report, the Abstract Report and the final DOE decision. In addition, Shannon maintained that DOE–IG violated the Privacy Act by relying on inaccurate and irrelevant information placed in his personnel file by GE in making a determination with respect to his administrative discrimination complaint.[2]

### A. Early Motions and the District Court's Interlocutory Rulings

GE and the federal defendants moved to dismiss Shannon's *Bivens* claims. On January 28, 1993, the district court issued a decision and order in which it found that Shannon's complaint pled constitutional violations in a wholly conclusory and nonspecific manner, without indicating which constitutional rights were violated, how those rights were violated or who violated them. *See Shannon v. General Elec. Co.*, 812 F.Supp. 308, 322–24 (N.D.N.Y.1993). The court also found that Shannon failed to identify the individuals responsible for the alleged constitutional violations, and instead simply named as defendants DOE, DOE–IG and GE, which is a corporation. *See id.* at 323. The court thus dismissed Shannon's *Bivens* claims, but granted him leave to replead his complaint, if appropriate, following the completion of discovery. *See id.* ("If supported by the evidence, [Shannon] may then reallege this cause of action specifying the constitutional rights he is alleging were violated and naming

---

1. The Privacy Act provides that except under certain specified conditions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C.A. § 552a(b) (West Supp.1999).

2. The Privacy Act provides that "[e]ach agency that maintains a system of records shall ... maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C.A. § 552a(e)(5) (West 1996).

the individuals who he asserts were acting under color of federal law and were responsible for the deprivation of those constitutional rights.").[3]

Following discovery, GE and the federal defendants filed motions for summary judgment on the remaining Privacy Act claims, and Shannon cross-moved for leave to amend his complaint both to add revised *Bivens* claims and to supplement his Privacy Act claims. During a hearing on the motions on October 27, 1994, the district court issued an oral ruling granting summary judgment in favor of GE on the ground that GE was not a "Government controlled corporation" and thus was not an "agency" subject to the Privacy Act. *See* 5 U.S.C.A. § 552(f)(1) (West Supp. 1999) (defining an agency to include any Government controlled corporation). The district court denied the federal defendants' motion for summary judgment, however, pending further discovery. The court also granted Shannon's motion for leave to amend his complaint to supplement his Privacy Act claims and to add revised *Bivens* claims against the federal defendants, but reserved decision with respect to the *Bivens* claims against GE.

On April 16, 1996, the district court revisited this oral ruling and issued an opinion and order (the "1996 order") denying Shannon's motion for leave to amend his complaint to add revised *Bivens* claims against any of the defendants. *See Shannon v. General Elec. Co.*, No. 92–CV–696 (FJS/DNH), 1996 WL 191946, at *3–5 (N.D.N.Y. Apr.16, 1996). The court reasoned that the factual circumstances pled by Shannon "[did] not justify the judicial

creation of a *Bivens* remedy"—and thus amendment of the complaint would be futile—for the following two reasons:

> First, there is sufficient indication that Congress's failure to include [employees of government-owned, contractor-operated facilities] under section 201 of the Energy Reorganization Act of 1974 was not inadvertent. *See* 42 U.S.C. § 5851 (1988). Judicial deference is therefore appropriate. Second, Congress specifically authorized the DOE to create a remedial scheme that ensures occupational safety and health at DOE facilities. This authorization resulted in DOE Order 5483.1A which establishes an adequate scheme to remedy constitutional violations of the kind alleged by [Shannon].

*Id.* at *5. The 1996 order incorporated that portion of the court's oral ruling that granted summary judgment to GE and denied summary judgment to the federal defendants with respect to Shannon's Privacy Act claims. *Id.* at *6. The court further granted Shannon's motion for leave to amend his complaint to supplement his Privacy Act claims against the federal defendants. *See id.* These Privacy Act claims were the only claims that survived the 1996 order.

### B. Subsequent Inaction and Dismissal for Failure to Prosecute

Shannon never filed an amended complaint consistent with the 1996 order. In fact, for nearly two years following the issuance of that order, Shannon failed to take any action on his remaining claims.[4] On February 20, 1998, the court clerk finally sent Shannon a notice (the "dismissal

---

3. The court also dismissed as time-barred certain Privacy Act claims relating to GE's alleged placement of derogatory performance appraisals and other records in Shannon's personnel file and the alleged maintenance of irrelevant and incomplete personnel records by DOE and defendant Office of Personnel Management. *See* 812 F.Supp. at 318–20. Shannon does not challenge this ruling on appeal.

4. Two months after the district court issued its 1996 order, Shannon filed a notice of appeal. After attending a pre-appeal conference, however, Shannon recognized that this Court lacked jurisdiction and, accordingly, withdrew the appeal under Fed. R.App. P. 42(b). At that time, Shannon did not ask the district court either to enter a final judgment with respect to the 1996 order under Fed. R.Civ.P. 54(b) or to certify an interlocutory appeal under 28 U.S.C. § 1292(b).

notice") advising him that his lawsuit had been scheduled for a "dismissal calendar call" on May 8, 1998, and directing him to "file an affidavit, in response to this notice, as to why this action should not be dismissed." [5] Shannon never filed this affidavit. Instead, his attorney sent a letter to the court requesting a conference

> to discuss if and how the Court will entertain an application to amend the Court's Order of April 16, 1996 pursuant to [Fed.R.Civ.P.] 54(b) to reflect that the Court's order is a "final judgment" with respect to [Shannon's Privacy Act claims against GE], and with respect to the denial of [Shannon's] request to amend the complaint adding [*Bivens* claims] or, in the alternative, we would seek to amend the Order pursuant to 28 U.S.C. § 1292(b) to reflect that the Court grants the plaintiff the right to appeal the denial of the motion to amend the complaint adding a cause of action under [*Bivens* ] on the grounds that the order involves a controlling issue of law for which there is a substantial ground for a difference of opinion.

In the letter, Shannon's attorney characterized the *Bivens* claims as "central to [the] case," but acknowledged that "[b]ecause Shannon's Privacy Act claims [we]re still pending, [he] [could not] seek review of the [1996 order] even though the Privacy Act claims [we]re ancillary to the *Bivens* claims."

The federal defendants responded with a letter to the district court arguing that Shannon's lawsuit had not been diligently prosecuted and was thus ripe for dismissal. GE also sent a letter to the court opposing Shannon's request for entry of a final judgment as to the 1996 order or for certification of an interlocutory appeal. Shannon's attorney then sent the court a second letter, which reminded the court of his request "to certify this case for appellate review before the Second Circuit Court of Appeals," and asked whether he needed to submit "still another explanation" in response to the dismissal notice. The district court apparently did not respond to this communication but proceeded with the scheduled May 8, 1998 conference call. Although the call was not transcribed, the court found that Shannon had not articulated any justification for his failure to take action on his case for over two years. *See Shannon v. General Elec. Co.*, No. 92–CV–0696, 1998 WL 246683, at *1 (N.D.N.Y. May 15, 1998). The court thus found that Shannon had failed to prosecute his case diligently . and, accordingly, dismissed the action for failure to prosecute pursuant to N.D.N.Y. R. 41.2(a). *Id.* This appeal followed.

## DISCUSSION

### I. *Scope of This Appeal*

■ In this appeal, Shannon challenges not only the district court's final judgment dismissing his action for failure to prosecute, but also its interlocutory order granting summary judgment in GE's favor and denying him leave to amend his complaint to add revised *Bivens* claims. "In the federal system, [however,] parties may appeal ordinarily only from 'final decisions of the district courts.' " *Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir.1996) (quoting 28 U.S.C. § 1291). They may not, except in limited circumstances, appeal from interlocutory decisions that "adjudicate[ ] fewer than all the claims or the rights and liabilities of fewer than all the parties." *See* Fed.R.Civ.P. 54(b). As a threshold matter, we must therefore determine whether the district court's interlocutory

---

**5.** The dismissal notice explained that "[t]he calendar consists of civil cases which appear to not have been diligently prosecuted, as set forth in Local Rule 41.2 of the Northern District of New York." *See* N.D.N.Y. R. 41.2(a) ("Each judge shall from time to time notice for hearing on a dismissal calendar such actions. or proceedings assigned to that judge which appear not to have been diligently prosecuted. Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge shall order it dismissed.")

order is appealable under the circumstances of this case.

█ When a district court enters a final judgment in a case, interlocutory orders rendered in the case typically merge with the judgment for purposes of appellate review. *See Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir.1968) (noting that "interlocutory orders and decrees are merged into the final order of the district court [and] may be reviewed on the appeal") (citation omitted); *John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 105 (1st Cir.1998) ("[I]t has been uniformly held that a notice of appeal that designates the final judgment encompasses not only that judgment, but also all earlier interlocutory orders that merge in the judgment."); 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3905.1, at 250 (2d ed.1991) (noting "general rule that appeal from final judgment opens the record and permits review of all rulings that led up to the judgment"). By making interlocutory orders unappealable until a final judgment has been entered, these rules advance the "historic federal policy against piecemeal appeals," *see Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir.1997) (citations and internal quotation marks omitted), while preserving the right to appeal adverse rulings.

█ When a final judgment results from a dismissal for failure to prosecute, however, the final judgment and merger rules may come into conflict. This is because [i]f a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal [for failure to prosecute], and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened. This procedural technique would in effect provide a means to avoid the finality rule embodied in 28 U.S.C. § 1291.

*Palmieri*, 88 F.3d at 139 (citations and internal quotation marks omitted). Moreover, if a party who was disappointed by an interlocutory ruling could obtain an appeal of that ruling by simply refusing to prosecute his or her lawsuit, "adherence [to the merger rule] would reward [that] party for dilatory and bad faith tactics." *John's Insulation*, 156 F.3d at 105 (quoting *Sere v. Board of Trustees of the Univ. of Illinois*, 852 F.2d 285, 288 (7th Cir. 1988)). Such a result would conflict with "[t]he purpose of a Rule 41(b) dismissal for failure to prosecute ... [, which] is to penalize dilatoriness and harassment of defendants." *Id.* at 107. These considerations suggest that interlocutory orders should not ordinarily merge with a final judgment dismissing an action for failure to prosecute. *Cf. Palmieri*, 88 F.3d at 139–42 (holding that the district court's *in limine* evidentiary ruling did not merge with its final judgment dismissing the action for failure to prosecute after the plaintiff refused to proceed to trial without the excluded evidence, and characterizing the appeal as "illustrat[ing] the problems that arise when a party tries to evade the final judgment rule").

As Shannon points out, we recognized limited exceptions to this principle in *Allied Air Freight*, 393 F.2d at 443 (reviewing an interlocutory stay order on appeal from a final judgment dismissing the action without prejudice for lack of prosecution), and *Gary Plastic Packaging Corporation v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990) (holding that an interlocutory order denying a motion for class certification merges into a final judgment resulting from the class representative's failure to prosecute its individual claims). We have since treated these cases, however, as narrow exceptions to the more general rule that interlocutory orders do not properly merge with a final judgment dismissing an action for failure to prosecute. *See Palmieri*, 88 F.3d at 141 (distinguishing *Allied Air Freight* and *Gary Plastic* on grounds

that in those cases, "the prior order as a practical matter stopped the plaintiff's action altogether or could not be examined again at trial"). Moreover, this Circuit's merger rule, as articulated in *Allied Air Freight* and *Gary Plastic,* has been rejected by other circuits. *See John's Insulation,* 156 F.3d at 105–07 (rejecting reasoning of *Allied Air Freight* and *Gary Plastic* in favor of "majority rule" that "interlocutory rulings do not merge into a judgment of dismissal for failure to prosecute"); *Huey v. Teledyne, Inc.,* 608 F.2d 1234, 1239–40 (9th Cir.1979) (discussing *Allied Air Freight,* but holding that "[w]here the record shows that the denial of class certification caused the failure to prosecute, that ruling does not merge in the final judgment for purposes of appellate review, at least where, as [in *Huey* ], the resulting dismissal was proper"); *Hughley v. Eaton Corp.,* 572 F.2d 556, 557 (6th Cir.1978) (declining to adopt rationale or holding of *Allied Air Freight* and holding that "the sufferance of a dismissal of a cause without prejudice is not to be employed as an avenue for reaching issues which are not subject to interlocutory appeal as of right").

We need not revisit our holdings in *Allied Air Freight* and *Gary Plastic* in this case because both of those decisions involved very different circumstances. In *Gary Plastic,* for example, the plaintiff clearly expressed its willingness to forfeit its individual claims in order to appeal the district court's interlocutory denial of class certification. *See* 903 F.2d at 180 (declining to consider whether the district court erred in dismissing the plaintiff's individual claims with prejudice based on the plaintiff's concession that it did not intend to pursue those claims). Shannon has never made a clear statement, either to the district court or to this Court, that he would be willing to abandon his remaining Privacy Act claims against the federal defendants in order to obtain review of the district court's 1996 order. To the contrary, Shannon challenges the dismissal of those claims on appeal. *See infra* Part II.

*Allied Air Freight* is likewise inapposite. The district court in that case issued a stay order, which precluded the plaintiffs from proceeding with their action in federal court without first exhausting their administrative remedies. *See* 393 F.2d at 445. Unlike the plaintiffs in *Allied Air Freight,* Shannon had live claims in federal court that he was free to, yet chose not to, continue litigating. Shannon could have litigated those claims to judgment and then challenged the district court's 1996 order on appeal from that judgment. In fact, as far as we can discern from Shannon's complaint, this course of action would not have entailed any substantial waste of resources. Shannon's *Bivens* claims alleging retaliation are, for the most part, legally and factually distinct from his Privacy Act claims alleging improper disclosure and maintenance of personnel records.

Although Shannon hoped to appeal the district court's *Bivens* ruling before proceeding to trial on his "ancillary" Privacy Act claims, he could not achieve this result by simply neglecting to litigate his Privacy Act claims for nearly two years until the court finally dismissed his case for failure to prosecute. The court's 1996 order therefore does not merge with the final judgment, and we lack jurisdiction to consider Shannon's arguments challenging the court's rulings with respect to his *Bivens* claims and his Privacy Act claims against GE.

## II. *Dismissal for Failure to Prosecute*

 Our review of a district court's decision to dismiss an action for failure to prosecute is limited to whether the court abused its discretion. *See Palmieri,* 88 F.3d at 140. In making this determination, we examine five principal factors:

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further

delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser sanctions. *Nita v. Connecticut Dep't of Envtl. Protection*, 16 F.3d 482, 485 (2d Cir.1994) (citations, alterations and internal quotation marks omitted) (brackets in original). "Generally, no one factor is dispositive." *Id.* Although "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning," the district court is not required to discuss the factors on the record. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Applying each of the factors in this case, we are satisfied that the district court acted within its discretion by dismissing Shannon's action for failure to prosecute.

A. Duration of Shannon's Failure to Prosecute

Shannon failed to prosecute his lawsuit over a prolonged period. That failure began on April 13, 1996, when the district court denied Shannon leave to amend his complaint to add revised *Bivens* claims but granted him leave to supplement his Privacy Act claims against the federal defendants, and lasted until February 20, 1998, when the court issued its notice of possible dismissal for failure to prosecute. The only action Shannon took during this nearly two-year period was to file an untimely notice of appeal of the court's 1996 order,

which appeal was subsequently withdrawn for lack of jurisdiction. Those cases in which we have reversed dismissals for failure to prosecute have involved substantially shorter delays than the one at issue here. *See, e.g., Lucas*, 84 F.3d at 535 (no more than 39 days); *Nita*, 16 F.3d at 486 (less than two months). Where, as here, "[i]naction and lethargy became the rule," we have not hesitated to affirm a district court's dismissal for failure to prosecute. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 39 (2d Cir.1982).[6]

B. Notice that Further Delays Would Result in Dismissal

Shannon received ample notice that further delays would result in dismissal of his case for failure to prosecute. The court's February 20, 1998 notice specifically advised Shannon that pursuant to N.D.N.Y. R. 41.2, his case had been scheduled for a dismissal calendar call on May 8, 1998. The notice directed Shannon to file a responsive affidavit "as to why th[e] action should not be dismissed," and specifically advised him that the case would be dismissed if he did not file a written response. In addition, the local rule referenced in the court's order explicitly provides that "[w]henever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge shall order it dismissed." N.D.N.Y. R. 41.2(a). Shannon, who was represented by counsel in the district court, was therefore on notice that his failure to respond to the dismissal notice would likely result in dismissal of his action for failure to prosecute.[7]

---

6. Shannon's nearly two-year delay following the court's 1996 order was not, moreover, "the first instance of delay attributable to the plaintiff." *See Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.1988) (reversing dismissal where the plaintiff had timely complied with all requests of the district court and the defendants prior to her failure to file a proposed pretrial order). In August 1993, the court and the parties agreed to resolve a discovery dispute by allowing Shannon to move for leave to amend his complaint to add revised *Bivens* claims without further discovery. Shannon did not move for leave to amend his complaint until April 8, 1994, more than seven months after he had agreed to do so and only after GE had moved for summary judgment with respect to Shannon's Privacy Act claims.

7. In addition, N.D.N.Y. R. 41.2(a) provides that "[i]n the absence of an order by the assigned judge or magistrate judge setting any date for any pretrial proceeding or for trial, failure by the plaintiff to take action for four (4) months shall be presumptive evidence of lack of prosecution." This provision was sufficient to place Shannon on notice, even prior

Shannon nevertheless failed to file the required affidavit or any other document explaining his failure to prosecute and why the case should not be dismissed.

### C. Prejudice to the Federal Defendants

Although the district court did not identify any specific prejudice to the federal defendants resulting from Shannon's failure to prosecute, "[p]rejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre*, 682 F.2d at 43. This is because delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult. *See Romandette v. Weetabix Co.*, 807 F.2d 309, 312 (2d Cir.1986) (finding no prejudice as a result of *pro se* plaintiff's inaction where there was "no indication that evidence [wa]s likely to be lost, or that discovery ha[d] been made more difficult"). In *Peart v. City of New York*, 992 F.2d 458 (2d Cir.1993), for example, we noted that because the plaintiff's failure to appear for trial on the scheduled date "would have resulted in the case being restored to [the district court's] docket[,] ... some of [defendants'] witnesses likely would have been unavailable or their recollection of the events at issue may well have been diminished." *Id.* at 462. A presumption of prejudice is particularly appropriate where, as here, the plaintiff's delay was prolonged. *See Lyell Theatre*, 682 F.2d at 43 (noting that "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater"). Because the events at issue in this lawsuit took place more than a decade before the district court dismissed the case, the likelihood that evidence in support of the federal defendants' position had become unavailable and that their witnesses' recollection had diminished was quite large. The district court was therefore entitled to presume prejudice to the federal defendants.

### D. Striking the Balance Between Alleviating Court Calendar Congestion and Protecting Shannon's Right to Due Process and a Fair Chance to Be Heard

The district court made no explicit findings with regard to its balancing of the need to alleviate court calendar congestion with Shannon's right to due process. As noted, however, Shannon received sufficient notice and a fair opportunity to be heard before the case was dismissed. The court gave Shannon specific notice that his case had been placed on the dismissal calendar, directed him to file an affidavit "as to why th[e] action should not be dismissed," and gave him an opportunity to respond both in writing and during a telephone conference on May 8, 1998. Shannon failed to file the required affidavit, failed to provide any explanation for his nearly two-year delay, failed to request additional time to litigate his remaining Privacy Act claims against the federal defendants, and failed to represent to the court that he was prepared to prosecute those claims diligently.

In determining whether the district court conducted the requisite balancing, it is, moreover, significant that N.D.N.Y. R. 41.2(a) *requires* courts either to dismiss the case or to take some other appropriate action if it appears that the plaintiff has failed to prosecute an action diligently. *See* N.D.N.Y. R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall order it dismissed.* ... If a party fails to respond as required by this Rule, the judge *shall* issue a written order dismissing the case for failure to prosecute or providing for sanctions or making other directives to the parties as

to the court's dismissal notice, that his continued failure to prosecute his case would likely result in dismissal.

196

justice requires.") (emphases added). The district court specifically found that Shannon had "failed to articulate any reason to justify his failure to take an[y] action on this case for over two years." The court then found, "[b]ased on the parties' responses to the [dismissal notice] and the arguments presented via telephone," that Shannon had "failed to prosecute his case diligently." 1998 WL 246683, at *1. In light of these findings and the court's strict compliance with N.D.N.Y. R. 41.2(a) in dismissing the action for failure to prosecute, we are satisfied that the court took care to strike the balance between alleviating court calendar congestion and protecting Shannon's right to due process and a fair chance to be heard.

### E. Efficacy of Lesser Sanctions

■ Shannon argues that the district court failed to consider alternative remedies to dismissal, such as setting a timetable for litigation of Shannon's remaining Privacy Act claims against the federal defendants. Shannon did not, however, request additional time to litigate his remaining claims, nor did he represent that he was prepared to prosecute those claims diligently. Rather, Shannon's responses to the dismissal notice, stressing the centrality of the *Bivens* claims to his case, focused exclusively on his untimely request to obtain review of the court's 1996 order under Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1292(b).[8] Under these circumstances, the district court had no reason to believe that lesser sanctions would be effective.

Having considered each of the relevant factors, we are satisfied that the district court's dismissal of Shannon's action was a proper exercise of discretion.

8. By the time Shannon made his application under Rule 54(b) and § 1292(b)—two years after the 1996 order was issued—the policy considerations underlying those provisions were no longer implicated. *See* Fed.R.Civ.P. 54(b) (authorizing district courts to direct entry of a "final judgment as to one or more but fewer than all of the claims or parties only

### CONCLUSION

We hold that the district court's interlocutory order denying Shannon leave to amend his complaint to add revised *Bivens* claims and granting summary judgment in favor of GE does not merge with its final judgment dismissing the action for failure to prosecute. Accordingly, this interlocutory order is not subject to appellate review. We further hold that the district court acted within its discretion when it dismissed Shannon's remaining Privacy Act claims against the federal defendants for failure to prosecute. The judgment of the district court is therefore affirmed.

upon an express determination that there is no just reason for delay"); 28 U.S.C. § 1292(b) (authorizing district courts to certify an interlocutory appeal upon a finding that, among other things, "an immediate appeal from the order may materially advance the ultimate termination of the litigation").