Brian COPELAND, Plaintiff,

v.

Cheryl ROSEN and The New York City Board of Education, Defendants.

No. 96 Civ. 6308(PKL).

United States District Court, S.D. New York.

June 15, 2000.

Brian R. Copeland, Brooklyn, NY, pro se.

Joan Franklin Mosley, New York City, for plaintiff.

Randy Ilene Monkarsh, Paul A. Crotty, William S.J. Fraenkel, Michael D. Hess, Corp. Counsel of the City of New York, New York City for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

The Court is faced with plaintiff's counsel's repeated failure to comply with the deadlines and orders of this Court. On three occasions, the Court has warned plaintiff's counsel that her dilatory manner of proceeding and her failure to heed the Court's orders would result in dismissal of plaintiff's suit. Having considered counsel's most recent transgressions and the tortured history of her conduct in this case, the Court finds that the severe sanction of dismissal is warranted by counsel's chronic delays and her disregard for the orders of the Court.

## BACKGROUND

In 1996, plaintiff brought this Title VII action alleging race and gender discrimination resulting in his termination by the Board of Education in July 1993. On March 18, 1997, following the withdrawal of plaintiff's counsel from the case, the Honorable Theodore H. Katz, United States Magistrate

Judge, granted plaintiff an adjournment of two months to retain a new attorney. On September 16, 1997, Joan Franklin Mosley informed the Court that she had been retained to represent plaintiff in this action, although she waited nearly eight months before filing a formal appearance.[1]

Since her representation of plaintiff commenced in September 1997, Ms. Mosley has repeatedly tested the patience of the Court and her adversary with her dilatory and oftentimes disrespectful conduct. Upon entering the case, Ms. Mosley immediately requested an extension of Judge Katz's longstanding[2] discovery deadline, from September 19, 1997, to January 5, 1998. Judge Katz granted this request, although, by Ms. Mosley's own admission, her request "should have been made fourteen days before the expiration of the discovery closure date," which she unabashedly noted was "due to [her] failing to note this requirement in the scheduling order." Ms. Mosley subsequently requested and received an additional month to complete discovery, at which time Judge Katz indicated that no further extensions would be granted beyond February 5, 1998.

By letter dated February 5, 1998, the day discovery was to be completed, Ms. Mosley made a third request for an extension of time for discovery, this time through April 5, 1998. Ms. Mosley noted in her letter that her adversary would not consent to the extension, which position appeared appropriate under the circumstances.[3] Ms. Mosley alleged that the extension was necessary because, *inter alia*, her "February calendar [was] full." By memorandum endorsement dated the same day, Judge Katz denied Ms.

Mosley's request, noting: "Today is the discovery deadline extension that was granted, with a notation that there would be no further extensions of time."

During a March 24, 1998, conference before this Court (Leisure, J.), plaintiff attempted to reopen discovery, notwithstanding Judge Katz's ruling that no further extensions would be granted. The Court informed Ms. Mosley that her failure to conduct any discovery during the first four months of her involvement in the case was inexcusable, and denied her request for further discovery. The Court inquired into the reasons for her nonfeasance, to which she replied that she was a sole practitioner and "did the best that she could." In response, the Court issued the first of its warnings that, if such conduct persisted, plaintiff's suit would be dismissed for failure to prosecute and failure to obey the orders of the Court. Plaintiff ignored the Court's ruling and continued to press her request for further discovery. The Court informed Ms. Mosley that her request was denied, and that she would not be permitted to pursue the issue any further. In response, plaintiff threatened to file a recusal motion, which was not ultimately brought. The Court contemplated imposing contempt sanctions on Ms. Mosley for her disrespect during this conference, but chose not to do so at that time. In this regard, she was reminded that in proceedings before the Court, she could represent her client's interests fully and still conduct herself as an officer of the Court.

1. On September 16, 1997, Judge Katz concluded his memorandum endorsement of Ms. Mosley's letter of the same date with instructions that "[c]ounsel is hereby advised to file a notice of appearance if she has not yet done so." Ms. Mosley did not file an appearance on plaintiff's behalf until eight months later, on May 21, 1998.

2. In his scheduling order dated May 19, 1997, Judge Katz set September 19, 1997, as a final cut-off date for discovery.

3. On June 6, 1998, defendants wrote the Court to oppose Ms. Mosley's request, noting that she had "waited until the last minute to commence discovery." After entering the case in August 1997 and seeking an extension of discovery from September until January, "Ms. Mosley took no discovery whatsoever until December 8 and 9, 1997, when she served document requests and interrogatories, and noticed depositions. At or around that time she obtained a second extension of the discovery cutoff date through February 5, 1998, and the Court ruled that there would be no further extensions of time.... In view of the fact that plaintiff's counsel did not commence discovery until four months after she appeared in the case, and one month before the discovery cutoff date which she requested, it is respectfully submitted that her request for a further extension should be denied." Letter dated June 6, 1998, from Susan E. Olick, Esq., to the Court.

On April 14, 1998, the Court set briefing deadlines for defendants' motion for summary judgment, enlarging time at defendants' request. The Court extended plaintiff's time to oppose the motion until June 15, 1998. Notwithstanding this extension, Ms. Mosley failed to file an opposition brief, placing her client's case in serious jeopardy. Having missed the deadline, Ms. Mosley then contacted the Court, requesting an extension after the fact. On June 18, 1998, the Court warned Ms. Mosley for the second time that her failure to comply with the Court's orders might result in sanctions, including dismissal of the action. The Court ordered plaintiff's counsel to file her papers by June 22. Notwithstanding the Court's stern warning and the additional time she was afforded, Ms. Mosley failed to file plaintiff's papers until June 24, at which time counsel made a request "that the enclosed memorandum in opposition to defendants' motion for summary judgment and supporting documents by accepted by this Court and that plaintiff not be ruled in default." Ms. Mosley indicated that she was "unable to meet that deadline due to multiple reasons, including my youngest son's sudden illness and a mix-up at the duplicating company, where my exhibits were being copied. The underlying reason, however, has been my health problems that impaired my judgment in estimating the time, realistically, in which I could present plaintiff's response." The Court reluctantly accepted plaintiff's papers on June 25, 1998.

In June 1999, defendants requested leave to depose Dr. Yarbrough, an expert witness heavily relied upon by plaintiff in her opposition papers, and to depose plaintiff himself with respect to issues raised for the first time in the Yarbrough affidavit. Leave was granted, but plaintiff's counsel was uncooperative in locating and producing Dr. Yarbrough for deposition. In anticipation of a pre-trial conference scheduled for late October 1999, defendants informed the Court that plaintiff had required repeated adjournments of these depositions, and that Dr. Yarbrough had not been fully deposed because he had problems with the agreed-upon schedule for the deposition, and the climate in the deposi-

tion room. Ms. Mosley requested that the October 1999 conference be adjourned, to which defendants strenuously objected. In addition, Ms. Mosley informed defendants that she wished to depose a number of teachers from plaintiff's school. Defendants told Ms. Mosley that they would not consent to this, "noting that plaintiff had the opportunity to depose such persons prior to the filing of the summary judgment motion but failed to do so. Plaintiff's counsel stated her belief that this Court had countenanced such additional discovery." Letter dated Oct. 15, 1999, from William S.J. Fraenkel, Esq., to the Court.

At a conference on October 25, 1999, the Court announced its concern that plaintiff seemed interested in taking "endless discovery," and suggested that the matter should be transferred back to Judge Katz for supervision, particularly in light of Judge Katz's order that no additional discovery would be allowed. Defendants finally consented to the additional depositions plaintiff wished to take, notwithstanding their earlier objections and the concern of the Court. The Court directed the parties to complete these depositions prior to January 14, 2000, when a conference was to be held. Plaintiff's counsel forced the adjournment of this conference until February 24, 2000, citing her own convenience. At the February conference, counsel informed the Court that all discovery had been completed. Accordingly, the Court granted the parties until April 28—more than two months—to submit their joint pre-trial order, trial briefs, and proposed voir dire and jury charges.[4] The Court made clear that it intended to try this case in the late spring or early summer of 2000.

On April 12, 2000, defendants' counsel wrote the Court to request an extension of the submission deadline for the pre-trial order to June 30, 2000. Counsel indicated that the parties "were overly optimistic concerning the amount of time required to prepare and submit the Joint Pre–Trial Order, and the parties find that they require additional time." The Court felt that a two-month extension was excessive under the circumstances, particularly in light of the Court's

4. This date was originally proposed by the parties, and was agreed to by the Court.

generosity in setting the original deadline. Upon consulting with the parties, the Court learned that defendants would require only three additional weeks to complete their portion of the pre-trial order, but that Ms. Mosley insisted that she needed two more months. The Court spoke with Ms. Mosley, who indicated that she was very busy with other cases, and, because she is a sole practitioner, would not be able to complete her portion of the joint pre-trial order before June 30. The Court informed Ms. Mosley that, if it were to extend the deadline through the end of May 2000, she would have six weeks to prepare her submission. Ms. Mosley responded that the Court was welcome to set a May deadline, but she was quite sure she would be back asking for more time at the end of May. The Court informed her that, in the interest of controlling its calendar, it was unlikely to grant such an extension, and urged her to comply with the Court's orders. On April 18, 2000, the Court extended the deadline for filing of the joint pre-trial order until May 26, 2000, noting that "[n]o further extensions shall be granted absent good cause shown."

On May 25, 2000, the Court received a letter from Ms. Mosley indicating that she would not comply with the May 26, 2000, deadline. She wrote, "This is a request that you extend the time ... for the parties to submit the Pre–Trial Order and all other documents that would be presented pursuant to that Order from May 26 until June 2, 2000. I have been unable to complete plaintiff's portion of the Order despite a real effort on my part. This difficulty stems in part from having to attempt to meet too many deadlines occurring in the same time frame. At this time, in addition, I am confronted with pressures attending the care of my husband, who has a long standing illness, but who is having more problems now than usual."

Ms. Mosley's letter placed the Court in an awkward position, because her request for an extension came literally on the eve of the Court's already-extended deadline, and therefore was not truly a request, but a demand. The Court very reluctantly granted the brief extension requested by counsel, indicating in its memorandum endorsement that "plaintiff is on notice that further unauthorized delays may result in sanctions or dismissal for failure to prosecute, and defendants will be invited to seek such relief." This constituted Ms. Mosley's third such warning in this case.

Late in the day on June 1, 2000, defendants' counsel informed the Court that Ms. Mosley had not yet provided him with her portion of the pre-trial order, and indicated that he did not believe that, "as a result of the delay in receiving plaintiff's portion of the JPTO," he would be able to submit the completed document to the Court by the end of June 2. The Court approved an extension over the weekend, through June 6, 2000, to allow Mr. Fraenkel two working days to incorporate Ms. Mosley's work into the document and submit it to the Court. On June 6, defendants timely filed the joint pre-trial order and all other papers due by defendants. Plaintiff, however, failed to meet this deadline, instead submitting a hand-written note that read as follows: "Please extend the time until June 9th for me to revise the submitted trial memorandum and to complete the requests to charge and voir dire questions. I request this aware of your indication you might sanction me. It is needed that I may represent my client well. Please be aware I did originally request that the due date for the PTO plus be June 30 in awareness of my difficult schedule." Ms. Mosley also submitted something between a rough draft and an outline of plaintiff's trial brief.

In a June 7, 2000 letter to the Court, defendants reminded the Court that "[t]hroughout this litigation plaintiff has, without adverse consequence, ignored Court ordered deadlines. Plaintiff persists in this course of conduct. Despite this persistent contemptuous behavior on plaintiff['s] part, defendants do not ask, at this time, that the permissible sanction of dismissal for failure to prosecute be imposed. Rather, the defendants ask that plaintiff be denied [an] opportunity to submit a pre-trial memorandum of law, jury charges and voir dire and further ask that the defendants['] motion to dismiss, as a matter of law, certain of plaintiff's claim[s], as set forth in defendants' pre-trial memorandum, be granted. In the alterna-

tive, should the Court allow plaintiff to belatedly submit the mandated pre-trial materials, defendants ask for the opportunity to respond to plaintiff's late submissions."

On June 8, Ms. Mosley wrote that her "failure to comply in full with the June 6th deadline was due to lack of time and not lack of effort and was not designed to show contempt of [the Court's] order as Mr. Fraenkel conjectures." Ms. Mosley also observed: "[I]f the Court feels that a sanction is warranted, I request that it be imposed on me personally as plaintiff's attorney, rather than [on] the plaintiff, and that this case not be dismissed or plaintiff not be handcuffed at trial by not being able to raise issues in jury selection that relate to a fair trial or by not having the opportunity to have reflected in the Court's charge to the jury plaintiff's perspective of the law."

Ms. Mosley did not even meet the June 9 deadline she proposed for submission of plaintiff's papers. Plaintiff's proposed jury charge and voir dire were received in chambers on June 12. Ms. Mosley has yet to submit plaintiff's trial brief, aside from the rough draft she submitted to the Court on June 6, four days after the twice-extended deadline.

## DISCUSSION

The record of Ms. Mosley's repeated failures to comply with the orders of this Court speak for themselves. For almost three years, the Court has struggled with Ms. Mosley in an effort to bring this case to trial, and at every step has been met by inexcusable delay and indifference to the Court's orders.

On three occasions, the Court has warned Ms. Mosley of the serious risks of representing her client in this fashion. While Ms. Mosley often apologizes and makes excuses for her manner of proceeding, on other occasions her words convey the same disrespect as her actions. In March 1998, she narrowly escaped the imposition of contempt sanctions for her contumacious conduct toward the Court during a pre-motion conference. In April 2000, she informed the Court that, in essence, it could set any deadline it wanted, but she did not plan to comply therewith. Such an attitude is likewise manifested in

Ms. Mosley's refusal to end discovery despite the orders of the Court, and her propensity to ignore deadlines, requesting extensions after the fact, despite the Court's admonitions that no further extensions will be allowed.

## I. DISMISSAL FOR FAILURE TO PROSECUTE

Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district courts to dismiss an action when a plaintiff fails "to prosecute or to comply with ... any order of the court." Fed.R.Civ.P. 41(b). In reviewing a district court's decision to dismiss a suit for failure to prosecute, the Second Circuit limits its inquiry to whether the court abused its discretion. *See, e.g., Shannon v. General Electric Co.*, 186 F.3d 186, 193 (2d Cir.1999). In making this determination, the Court considers five principal factors:

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.

*Id.* at 193–94 (quoting *Nita v. Connecticut Dep't of Envtl. Protection*, 16 F.3d 482, 485 (2d Cir.1994)). Generally, no single factor is dispositive. *See id.* "Although 'a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning,' the district court is not required to discuss the factors on the record." *Id.* (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996)). Nonetheless, the Court discusses below its application of the *Nita* factors.

### A. Duration of Plaintiff's Failures

Ms. Mosley's failure to comply with deadlines set by the Court and to proceed in a reasonable fashion has, in the aggregate, delayed the progress of this case by more than a year. Although the Second Circuit has affirmed the dismissal of cases for delays

of less than two months, *see, e.g., Lucas,* 84 F.3d at 535; *Nita,* 16 F.3d at 486, and in one case for a delay of two days, *see Maiorani v. Kawasaki Kisen K.K., Kobe,* 425 F.2d 1162, 1163 (2d Cir.1970), there is no "magic number." Here, the record clearly reflects Ms. Mosley's delay of the discovery process, without excuse, by many months. It further reflects numerous missed deadlines and extensions demanded by Ms. Mosley after the fact. Had Ms. Mosley completed plaintiff's discovery in accordance with Judge Katz's order, rather than waiting until the eve of the extended deadline to begin, and had she not insisted on continuing discovery beyond the cut-off date ordered by the Court, this suit would have been ready for trial in early 1999. Notwithstanding plaintiff's unauthorized delays and self-granted extensions in the discovery context, Ms. Mosley has unilaterally caused significant delays since the close of discovery, beginning with forcing the adjournment of the final pre-trial conference from January 2000 to February 2000, and then, even after insisting on two months to complete the pre-trial order, repeatedly ignoring this Court's orders to submit her papers and prepare for trial.

Even in cases where the Second Circuit has found plaintiff's delay to be minimal, it has affirmed dismissals for failure to prosecute when an attorney "failed to comply with . . . court orders and otherwise demonstrated a lack of respect for the court." *Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir.1993).[5] Such is clearly the case here.

### B. Plaintiff Received Notice that Further Delays Would Result in Dismissal

As detailed above, the Court informed Ms. Mosley on three separate occasions that her conduct, if repeated, would result in a dismissal for failure to prosecute. Ms. Mosley cannot plausibly suggest that the Court failed to warn her. Indeed, her communications with the Court make reference to the Court's stated intention to impose sanctions, including the sanction of dismissal.

### C. Likelihood of Prejudice to Defendants

Although defendants have not suffered prejudice of a specific nature, the Court observes that defendants have an interest in prompt resolution of suits in which they have been named, particularly where, as here, racial bias is alleged. The courts have also held that "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Shannon,* 186 F.3d at 195. Accordingly, the Second Circuit has held that "[p]rejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982).

### D. Balancing Judicial Convenience and Plaintiff's Right to Due Process

The Court notes at the outset that its dismissal of this action is not intended to serve its own convenience, as evidenced by the Court's patience with plaintiff's counsel through years of misconduct and delay. Rather, the Court wishes to make clear that defiance of its orders should not and will not be tolerated.

### E. Efficacy of Lesser Sanctions

The Court has carefully considered whether lesser sanctions than dismissal might be equally effective, and has concluded that they would not. Plaintiff's counsel has demonstrated a callous attitude toward every attempt by the Court to prevent undue delays in the disposition of this case. Were this Ms. Mosley's first transgression, the Court would certainly be more tolerant. *See Shannon* (quoting *Lyell Theatre,* 682 F.2d at 39) ("Where, as here, '[i]naction and lethargy became the rule,' we have not hesitated to

---

5. Although plaintiff may argue that some of the deadlines extended by the Court were changed at defendants' request, defendants' respectful and proper requests for enlargement of time do not excuse Ms. Mosley's dilatoriness. On similar facts, the Second Circuit has noted, "[w]hile both parties in fact were responsible for many delays during the pre-trial stage of the case, the court was warranted in finding that [plaintiff's counsel's] behavior was particularly egregious." *Peart,* 992 F.2d at 461.

affirm a district court's dismissal for failure to prosecute.' ") The Court has long threatened to sanction Ms. Mosley and dismiss her client's suit, to no avail. The Court has thus concluded that yet another admonition will serve no purpose in this case.

Thus, each of the *Nita* factors supports the Court's decision to dismiss this case for failure to prosecute. Although the Court recognizes that "dismissal is not favored because it imposes a penalty upon the client for [his] attorney's misconduct," *Peart*, 992 F.2d at 462, it is nonetheless well-settled that "the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of [ ]his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.' " *SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). As the Supreme Court further remarked in *Link*, "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Link*, 370 U.S. at 633–34, 82 S.Ct. 1386.

" 'Delays have dangerous ends and unless district judges use the clear power to impose the ultimate sanction when appropriate, exhortations of diligence are impotent.' " *Lediju v. New York City Dep't of Sanitation*, 173 F.R.D. 105 (S.D.N.Y.1997) (quoting *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir.1980)). " 'If parties could ignore Court Orders with the liberty in which [plaintiff] has acted, the civil justice system would suffer, and judges would have no reason to invest their energy in case management. In effect, parties and the Court would be at the mercy of the least diligent, the most irresponsible, or any obstreperous litigator. There would be no premium placed on adherence to a schedule or a Court Order, and no incentive to manage the litigation to reduce its cost and bring justice as expeditiously as possible to each of the parties.' " *Id.* (quoting *Martin v. Manufacturers Hanover*

*Trust*, 1996 WL 603937 at *6 (S.D.N.Y. Oct. 22, 1996)).

For these reasons, plaintiff's suit is dismissed for failure to prosecute.

## II. DISMISSAL FOR FAILURE TO OBEY COURT ORDERS

█ Rule 16(f) of the Federal Rules of Civil Procedure provides that " 'if a party . . . fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others, any of the orders provided in Rule 37(b)(2)(B), (C), (D).' " *Lediju*, 173 F.R.D. at 112 (quoting Fed.R.Civ.P. 16(f)).

Rule 37(b)(2)(B) authorizes the Court to issue an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." This is the remedy defendants propose, which Ms. Mosley observes would require her client to "be handcuffed at trial." The Court agrees, and finds that plaintiff will be in a better position if this action is dismissed without prejudice pursuant to Rule 37(b)(2)(C), giving plaintiff an opportunity to bring his case again, with a new lawyer if he chooses, and to seek whatever remedy he may choose against his present attorney for her handling of this case. *See Peart*, 992 F.2d at 462 ("We also observe that, although appellant has lost her action against appellees, she may well be able to commence an action against her attorney.")

Rule 37(b)(2)(C) provides, *inter alia*, for an order "rendering a judgment by default against the disobedient party." The Supreme Court has set forth policy reasons for even the strictest of sanctions. "Sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Lediju*, 173 F.R.D. at 112 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)) (internal quotes omitted). Dismissal is appropriate where "(1) the party has demonstrated willfulness, bad faith or fault, (2) less drastic sanctions

will not work, and (3) the party has been warned of dismissal for failure to comply with court orders." *Id.* (citing *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990)).

As discussed above, the Court has considered the second and third of these factors, and both militate in favor of dismissal. The Court infers Ms. Mosley's intent from the frequency with which she has failed to comply with the Court's orders, as such habitual conduct can hardly be deemed isolated or accidental. Indeed, on one recent occasion, when the Court informed plaintiff that it would only extend the deadline for submission of the joint pre-trial order by one month, Ms. Mosley told the Court, in effect, "You can do that, but I'll tell you now that I'll be back in a month asking for more time." This comment and others like it betray Ms. Mosley's belief that she only needs to heed the Court's orders when it suits her convenience. Ms. Mosley operates in this fashion at her peril and that of her clients. "Although caution is warranted in imposing such a severe sanction, dismissal is appropriate when a party willfully disobeys court orders." *Mubarak v. Artuz,* 1999 WL 980168 at *2 (quoting *Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir.1990)).

Ms. Mosley has, during the course of this case, frequently blamed her "inability" to comply with court orders on the fact that she is a sole practitioner and is very busy. The Court does not accept this as an excuse for disregarding the orders of the Court. While the Court does not doubt that Ms. Mosley is very busy, it should go without saying that she should not take on more clients than she can effectively represent. The Court has been more than generous in granting extensions and countenancing Ms. Mosley's seeming difficulty to comply with court orders, but each effort to accommodate her has led to another excuse. No attorney, from the largest law firm to the sole practitioner, is permitted to practice law in this fashion.

### CONCLUSION

For the reasons stated herein, plaintiff's action is dismissed without prejudice pursuant to Rules 41(b) and 16(f) of the Federal Rules of Civil Procedure.

**SO ORDERED.**