**Brian COPELAND, Plaintiff,**

v.

**Cheryl ROSEN and the New York City Board of Education, Defendants.**

**No. 96 Civ. 6308(PKL).**

United States District Court,
S.D. New York.

June 24, 2002.

**508**

Joan Franklin Mosley, Joan Franklin and Associates, New York City, for plaintiff.

William S.J. Fraenkel, Assistant Corporation Counsel, Corporation Counsel of the City of New York, New York City, for defendants.

### OPINION AND ORDER

LEISURE, District Judge.

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and based on the prior rulings of this Court and the Second Circuit Court of Appeals, defendants Cheryl Rosen and the New York City Board of Education, move to dismiss plaintiff's case presently before this Court on remand from the Second Circuit. For the following reasons, defendants' motion is granted.

## I. BACKGROUND

The facts of this case are set forth in detail in two earlier opinions of this Court, *Copeland v. Rosen,* 194 F.R.D. 127 (S.D.N.Y.2000) (*"Copeland I"*); 196 F.R.D. 20 (S.D.N.Y. 2000) (*"Copeland II"*); and in the opinion of the Second Circuit, *Copeland v. Rosen,* 25 Fed.Appx. 17, 2001 WL 1486007 (2d Cir.2001) (*"Copeland III"*). Accordingly, the Court discusses the facts only to the extent necessary to decide the instant motion.

In 1996, plaintiff brought this action under Title VII, 42 U.S.C. §§ 2000e *et seq.;* 42 U.S.C. § 1981; 42 U.S.C. § 1983; and New York State Executive Law § 296 (also known as the New York State Human Rights Law) alleging race and gender discrimination and retaliation resulting in his termination by the Board of Education in July 1993. In *Copeland I,* after explicating plaintiff's counsel's continued failure to comply with the Court's deadlines and orders, this Court dismissed plaintiff's case without prejudice pursuant to Rules 41(b) and 16(f) of the Federal Rules of Civil Procedure. *See* 194 F.R.D. at 134. After the Court denied plaintiff's motion for reconsideration pursuant to Local Rule 6.3 in *Copeland II,* 196 F.R.D. at 22, plaintiff appealed to the Second Circuit Court of Appeals. In *Copeland III,* the Second Circuit remanded the case so that this Court could consider two discrete issues; (1) whether this Court in dismissing plaintiff's claims without prejudice intended to effect a final dismissal of plaintiff's Title VII claims; and (2) because this Court erred in attributing one adjournment to plaintiff's counsel rather than defendants' counsel, would this Court change its view regarding plaintiff's failure to prosecute the action. *See Copeland III,* 25 Fed. Appx. 17, 19–20, 2001 WL 1486007.

As noted in *Copeland I,* the protracted history of this case reveals that since the inception of her representation of plaintiff in this action, Joan Franklin Mosley, Esq. has "repeatedly tested the patience of the Court and her adversary with her dilatory and of-

tentimes disrespectful conduct." *Copeland I*, 194 F.R.D. at 128. The first action taken by Ms. Mosley in September 1997 upon entering this case was to request a more than three and a half month extension of Magistrate Judge Katz's long-standing discovery deadline. Ms. Mosley admitted at the time that the request was made fourteen days late because she failed "to note this requirement in the scheduling order." *Copeland I*, 194 F.R.D. at 128. Thereafter, Ms. Mosley requested an additional month to complete discovery and Judge Katz indicated at that time that no further extensions would be granted beyond February 5, 1998. *See id.* Nonetheless, on the day discovery was to be completed, Ms. Mosley requested a third extension of time for discovery, which was denied. Despite this ruling by Judge Katz, at a March 24, 1998 conference, Ms. Mosley again attempted to reopen discovery at which time the Court informed her that her failure to conduct any discovery during the first four months was inexcusable and that if such conduct persisted, plaintiff's suit would be dismissed for failure to prosecute and for failure to obey the orders of the Court. *See id.* In response, Ms. Mosley threatened to file a recusal motion which ultimately was not brought.

On April 24, 1998, this Court set briefing deadlines for the parties on defendants' motion for summary judgment, extending time at defendants' request. The Court also extended plaintiff's time to submit opposition papers, however, Ms. Mosley failed to submit an opposition brief, "placing her client's case in serious jeopardy." *Copeland I*, 194 F.R.D. at 129. Shortly after missing the deadline, Ms. Mosley requested an extension and she was warned for the second time that her failure to comply with Court orders might result in dismissal of the action. *See id.* After ordering plaintiff's counsel to file her papers by June 22, 1998, she failed to file plaintiff's opposition papers until June 24 citing her child's illness, a mix-up at the duplicating company, and her own health problems that "impaired [her] judgment in estimating time, realistically, in which [she] could present plaintiff's response." *Id.* The Court "reluctantly" accepted the papers on June 25, 1998. *See id.* Thereafter, defen-

dants' motion for summary judgment was granted in part and denied in part. *See Copeland v. Rosen,* 38 F.Supp.2d 298 (S.D.N.Y.1999).

In June 1999, defendants requested leave to depose Dr. Yarbrough, an expert witness heavily relied upon by plaintiff in his opposition papers, and to depose plaintiff with respect to issues raised for the first time in the Yarbrough affidavit. *See Copeland I,* 194 F.R.D. at 129. Leave was granted, but plaintiff's counsel seemed to be uncooperative in locating and producing Dr. Yarbrough for deposition. In anticipation of a pre-trial conference scheduled for late October 1999, defendants informed the Court that plaintiff had required repeated adjournments of these depositions, and that Dr. Yarbrough had not been fully deposed because he had problems with the agreed-upon schedule for the deposition and the climate in the deposition room. *See id.* Ms. Mosley requested that the October 1999 conference be adjourned, to which defendants strenuously objected. In addition, Ms. Mosley informed defendants that she wished to depose a number of teachers from plaintiff's school. Defendants told Ms. Mosley that they would not consent to this, "noting that plaintiff had the opportunity to depose such persons prior to the filing of the summary judgment motion but failed to do so. Plaintiff's counsel stated her belief that this Court had countenanced such additional discovery." *See id.* (citing Letter dated Oct. 15, 1999, from William S.J. Fraenkel, Esq. to the Court).

At a conference on October 25, 1999, the Court announced its concern that plaintiff seemed interested in taking "endless discovery," and suggested that the matter be transferred back to Judge Katz for supervision, particularly in light of Judge Katz's order that no additional discovery would be allowed. Nonetheless, defendants agreed to some additional depositions and the Court directed the parties to complete these depositions prior to January 14, 2000, when a conference was to be held.

The next conference was held on February

24, 2000[1] at which time counsel informed the Court that all discovery had been completed. Accordingly, the Court granted the parties until April 28–more than two months–to submit their joint pre-trial order, trial briefs, and proposed voir dire and jury charges. The Court made clear that it intended to try this case in the late spring or early summer of 2000.

On April 12, 2000, defendants' counsel wrote the Court to request an extension of the submission deadline for the pre-trial order to June 30, 2000. Counsel indicated that the parties "were overly optimistic concerning the amount of time required to prepare and submit the Joint Pre–Trial Order, and the parties find that they require additional time." The Court felt that a two-month extension was excessive under the circumstances, particularly in light of the Court's generosity in setting the original deadline. Upon consulting with the parties, the Court learned that defendants would require only three additional weeks to complete their portion of the pre-trial order, but that Ms. Mosley insisted that she needed two more months. The Court spoke with Ms. Mosley, who indicated that she was very busy with other cases, and, because she is a sole practitioner, would not be able to complete her portion of the joint pre-trial order before June 30. The Court informed Ms. Mosley that if it were to extend the deadline through the end of May 2000, she still would have six weeks to prepare her submission. Ms. Mosley responded that the Court was welcome to set a May deadline, but she was quite sure she would be back asking for more time at the end of May. The Court informed her that, in the interest of controlling its calendar, it was unlikely to grant such an extension, and urged her to comply with the Court's orders. On April 18, 2000, the Court extended the deadline for filing of the joint pre-trial order until May 26, 2000, noting that "[n]o further extensions shall be granted absent good cause shown." *Id.* at 130.

On May 25, 2000, the Court received a letter from Ms. Mosley indicating that she would not comply with the May 26, 2000, deadline and that she would request an extension until June 2. She wrote that she was unable to complete her portion "despite a real effort on [her] part" and that this difficulty stemmed from having too many deadlines occurring in the same time frame and her need to care for her ill husband. Clearly, Ms. Mosley's letter placed the Court in an uncomfortable position, because her request for an extension came literally on the eve of the Court's already-extended deadline, and therefore was not truly a request, but a demand. The Court very reluctantly granted the brief extension requested by counsel, indicating in its memorandum endorsement that "plaintiff is on notice that further unauthorized delays may result in sanctions or dismissal for failure to prosecute, and defendants will be invited to seek such relief." *Id.* at 130. This constituted Ms. Mosley's third such warning in this case.

Late in the day on June 1, 2000, defendants' counsel, William S.J. Fraenkel, Esq., informed the Court that Ms. Mosley had not yet provided him with her portion of the pre-trial order, and indicated that he did not believe that, "as a result of the delay in receiving plaintiff's portion of the JPTO," he would be able to submit the completed document to the Court by the end of June 2. The Court approved an extension over the weekend, through June 6, 2000, to allow Mr. Fraenkel two working days to incorporate Ms. Mosley's work into the document and submit it to the Court. On June 6, defendants timely filed the joint pre-trial order and all other papers due by defendants. Plaintiff, however, failed to meet this deadline, instead submitting a hand-written note that read as follows: "Please extend the time until June 9th for me to revise the submitted trial memorandum and to complete the requests to charge and voir dire questions. I request this aware of your indication you might sanction me. It is needed that I may represent my client well. Please be aware I did originally request that the due date for the PTO plus be June 30 in awareness of my difficult schedule." *Id.* at 130. Ms. Mosley also submitted something between a rough

---

1. This pre-trial conference adjournment was attributed incorrectly to plaintiff's counsel in *Cope-* *land* I and it forms the basis of one of the subjects of the present motion.

draft and a mere outline of plaintiff's trial brief.

In a June 7, 2000 letter to the Court, defendants noted that throughout the litigation plaintiff had, without adverse consequence, ignored deadlines set by the Court. Rather than request the permissible sanction of dismissal for failure to prosecute, defendants asked that plaintiff be denied an opportunity to submit a pre-trial memorandum of law, jury charges, and voir dire and further asked that the defendants' motion to dismiss certain of plaintiff's claims be granted. *See id.* at 130.

On June 8, 2000, Ms. Mosley wrote that her "failure to comply in full with the June 6th deadline was due to lack of time and not lack of effort and was not designed to show contempt of [the Court's] order as Mr. Fraenkel conjectures." Ms. Mosley also observed: "[I]f the Court feels that a sanction is warranted, I request that it be imposed on me personally as plaintiff's attorney, rather than [on] the plaintiff, and that this case not be dismissed or plaintiff not be handcuffed at trial by not being able to raise issues in jury selection that relate to a fair trial or by not having the opportunity to have reflected in the Court's charge to the jury plaintiff's perspective of the law." *Id.* at 131.

Thereafter, on June 15, 2000 this Court in *Copeland I* rejected defendants' proposal to deny plaintiff's opportunity to submit a pre-trial memorandum of law, jury charge, and voir dire, finding that if such a remedy were granted, plaintiff would, as plaintiff's counsel suggested, "be handcuffed at trial." *Copeland I,* 194 F.R.D. at 133. Instead, the Court dismissed the action without prejudice pursuant to Rule 41(b) and Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, "giving plaintiff an opportunity to bring his case again, with a new lawyer if he chooses, and to seek whatever remedy he may choose against his present attorney for her handling of this case." *Id.*

Plaintiff then moved for reconsideration arguing that a lesser sanction was warranted; the Court never warned plaintiff's

counsel that further delays could result in dismissal; and the Court's dismissal of the action for failure to prosecute and for failure to obey the Court's orders constitutes "an annihilation" of plaintiff's First Amendment right of free association. *See Copeland II,* 196 F.R.D. at 21. Plaintiff also argued the Court violated his equal protection rights by applying a double standard in judging the conduct of both attorneys to the action. The Court separately considered each of these arguments and denied plaintiff's motion for reconsideration. *See id.* at 22.

Instead of refiling his case, plaintiff chose to maintain the same attorney, Ms. Mosley, and he appealed to the Second Circuit Court of Appeals. In *Copeland III,* the Second Circuit concluded that this Court's dismissal, without prejudice, effectively extinguishes plaintiff's Title VII claims because of Title VII's requirement that a complaint must be filed within 90 days of receiving a right-to-sue letter. *See* 25 Fed.Appx. at 19–20, 2001 WL 1486007. The Second Circuit noted that it was "uncertain whether the district court intended to impose a sanction less drastic than one that is essentially a final dismissal [of the Title VII claims]" and remanded for clarification. *Id.* The Court also questioned whether the fact that this Court incorrectly attributed to the plaintiff an adjournment of a pre-trial conference to February 24, 2000, would have affected its decision to dismiss the action. *Id.* The Court opined that "[w]hile the record as a whole may, on review under an abuse of discretion standard, still support a dismissal for failure to prosecute even if the adjournment of the conference in question was not at the instance of [plaintiff's] counsel, we cannot know whether the district judge would have made the same decision if properly informed." *Id.*

Thereafter, this Court scheduled a pre-trial conference for December 12, 2001 at 10:30 a.m. and sent written notice to plaintiff's counsel in a letter dated November 30, 2001. Over a half an hour passed and neither plaintiff nor Ms. Mosley appeared,[2] thus

---

2. During this conference, the Court's Courtroom Deputy, who is in charge of scheduling, stated

that the United States Post Office had not re-

the Court scheduled another conference for January 7, 2002 at 10:30 a.m. and sent to Ms. Mosley, for the second time, written notice of the conference. In advance of the January 7, 2002 conference, defendants submitted a letter to the Court dated December 13, 2002 setting forth their argument that the Court should adhere to its prior ruling and dismiss the action. The letter was carbon copied to Ms. Mosley. Thereafter, in a letter to the Court dated December 21, 2001, Ms. Mosley replied to defendants' December 13 letter making no apology for failing to appear at the December 12 conference. Rather, Ms. Mosley noted that she only learned of the first conference through receipt of defendants' December 13 letter and that she never received the November 30 letter from the Court.[3] Ms. Mosley did not attempt to explain her absence at the December 12 conference, instead noting that "[i]t is of great concern" to her that she did not receive the first letter and that she would "request that [the Court] communicate with [her] by certified mail to avoid any further misunderstanding."

On January 7, 2002, both parties appeared for the re-scheduled pre-trial conference, during which defendants reiterated their argument that the Court should adhere to its prior ruling and dismiss the action. Ms. Mosley did not respond to these specific arguments, but rather indicated she would like plaintiff's case to be reinstated in its entirety and suggested that the Court was not concerned with plaintiff having his day in Court. The Court told the parties that it would be prudent to proceed more formally and address the Second Circuit's remand in a comprehensive manner. Accordingly, the Court set a briefing schedule for the present motion.

## II. DISCUSSION

Rule 41(b) of the Federal Rules of Civil Procedure, provides, in pertinent part, "[f]or failure of the plaintiff to prosecute or comply with ... any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Fed.R.Civ.P.

41(b). As articulated by the Supreme Court in the seminal case *Link v. Wabash R.R. Co.,* "[t]he authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." 370 U.S. 626, 629, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) ("Federal courts from the start have been the steadfast protectors of a defendant's right to be free from idle procrastination on the part of the plaintiff.").

Although dismissal with prejudice is a "harsh remedy to be utilized only in extreme situations,' ... the authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972)); *see Chira,* 634 F.2d at 668 ("Burgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination."). Accordingly, as stated in *Copeland I,* the Second Circuit's review of a district court's decision to dismiss an action for failure to prosecute is limited to whether the court abused its discretion. *See, e.g., Shannon v. General Electric Co.,* 186 F.3d 186, 193 (2d Cir.1999).

■ In making this determination, the Court examines five factors:

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.

*Id.* at 193–94 (quoting *Nita v. Connecticut Dep't of Envtl. Protection,* 16 F.3d 482, 485

---

turned as undeliverable the Court's November 30, 2002 letter.

**3.** She stated, however, that she *did* receive notice of the January 7, 2002 conference.

(2d Cir.1994)). Moreover, "[b]ecause of the deterrence principle involved in dismissal for failure to prosecute, a plaintiff's hopelessly belated compliance should not be accorded great weight." *Lyell,* 682 F.2d at 43 (internal quotations omitted).

With these considerations in mind, the Court will proceed to address the two issues remanded to this Court by the Second Circuit.

### A. *Final Dismissal of Plaintiff's Title VII Claims*

■ Because this Court dismissed plaintiff's case without prejudice in *Copeland I,* the Second Circuit has asked this Court to consider whether it intended to impose a sanction less drastic than one that is essentially a final dismissal of plaintiff's Title VII claims. Based upon the dilatory way in which plaintiff's counsel conducted herself from the commencement of her representation of plaintiff in this action and upon the totality of circumstances, the Court clarifies that it intended this sanction. *See Lyell,* 682 F.2d at 43 ("Sanctions must be determined in light of the full record in the case.") (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)).

As the previous discussion and recitation of the facts of this case make clear, plaintiff continually failed to comply with the orders of this Court. For years, the Court struggled with Ms. Mosley in an effort to bring this case to trial, and at every step was met by inexcusable delay and indifference to the Court's orders. Although the Court has been flexible, Ms. Mosley's status as a solo practitioner and her busy schedule do not excuse this dereliction. *See Nilsa Austin v. Alexander's Dept. Stores, Inc.,* No. 84 Civ. 1044, 1985 WL 2886, at *1 (S.D.N.Y. Oct. 1, 1985) ("An attorney's inability to efficiently manage her caseload does not constitute grounds for relief from final judgment.") (citing *United States v. Cirami,* 535 F.2d 736, 739 (2d Cir.1976)). Moreover, on three separate occasions, the Court warned Ms. Mosley of the serious risks of representing her client in this fashion. While Ms. Mosley often apologized and made excuses for her manner of

proceeding, on other occasions her words conveyed the same disrespect as her actions. Her behavior on remand was no different: she failed to attend the first pre-trial conference scheduled by the Court and instead of apologizing for her absence, essentially blamed the Court for her failure to appear. Based on the entire history of this case and pertinent case law, therefore, the Court finds that it could have dismissed *with prejudice* plaintiff's action in its entirety for those reasons alone. *See, e.g., Chira,* 634 F.2d at 665 (affirming dismissal with prejudice of employment discrimination action *inter alia* because plaintiff's behavior was "dilatory, obstreperous, and resolute...."); *Johnson v. M. Melnick & Co.,* No. 91 Civ. 7961, 1996 WL 239994, at *10 (May 8, 1996) (dismissing with prejudice plaintiff's Title VII and § 1981 claims under Rule 41(b) and Rule 37); *Nilsa Austin,* 1985 WL 2886, at *1–*2 (denying relief under Rule 60(b) from dismissal with prejudice because plaintiff's counsel missed two pre-trial conferences and was dilatory in prosecuting action). For this reason, therefore, the effect of final extinguishment of plaintiff's Title VII claims would not change this Court's previous ruling.

Further, defendants have suggested that plaintiff has not been completely cut off at the knees by his chosen counsel's dilatoriness. Defendants argue, in essence, that plaintiff's Title VII claims parallel his claims brought under 42 U.S.C. § 1981 and New York State Executive Law § 296. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defs. Mem."), at 13. Thus, they assert, even if the dismissal without prejudice will terminate plaintiff's Title VII claims, neither plaintiff's claim under § 1981 nor his claim under § 296 is affected by Title VII's 90–day filing requirement and thus they are still actionable. *See id.*

It is clear, nonetheless, that both plaintiff's § 1981 and § 296 claims are subject to New York's three-year statute of limitations. Pursuant to CPLR § 214, claims brought under New York State Executive Law § 296 are subject to a three-year statute of limitations. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). Simi-

larly, in determining the timeliness of a § 1981 claim, federal courts generally apply the forum state's statute of limitations rules for personal injury claims. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660–61, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *see also Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977) (holding that federal courts apply the law of the forum state, including the forum's borrowing rules, to determine the applicable statute of limitations when the federal statute does not contain a limitations period). Thus, claims brought under § 1981 also are subject to New York's three-year statute of limitations.

Plaintiff's counsel asserts in a letter to the Court dated December 21, 2001 that, despite the Court's dismissal without prejudice, all of plaintiff's claims will be extinguished because they are subject to this three-year statute of limitations. However, defendants bring to the Court's attention the possible applicability of the New York "savings statute," N.Y. C.P.L.R. § 205 ("Section 205"). Section 205 provides, in pertinent part:

> (a) New Action by plaintiff. If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal for neglect to prosecute the action, or a final judgment on the merits, the plaintiff ... may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

N.Y. C.P.L.R. § 205(a). Cases confirm the remedial nature and purpose of Section 205:

> [T]he function of the CPLR subdivision is to ameliorate the potentially harsh effect of the Statute of Limitations in certain cases in which at least one of the fundamental purposes of the Statute of Limitations has

in fact been served, and the defendant has been given timely notice of the claim being asserted by or on behalf of the injured party. The statute is a remedial one, and, as Judge Cardozo has explained, "[i]ts broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts."

*In re Morris Investors, Inc. v. Commissioner of Finance of the City of New York,* 121 A.D.2d 221, 503 N.Y.S.2d 363, 366 (N.Y.App. Div.1986) (quoting *Gaines v. City of New York,* 215 N.Y. 533, 539, 109 N.E. 594 (N.Y. 1915)).

Defendants contend that Section 205 saves plaintiff's § 1981 and § 296 claims. Although the action was dismissed for failure to prosecute, they argue, this Court dismissed the claims *without prejudice,* thereby rendering Section 205 applicable to extend the statute of limitations. *See* Defs. Mem. at 13. There is some support for this contention. New York state courts have found that such dismissals, without prejudice, evince an intent on the part of the trial judge "to preserve whatever right plaintiff had to pursue his remedy further" thus cloaking the claims under the protection of Section 205. *Izquierdo v. Cities Service Oil Co.,* 47 Misc.2d 1087, 264 N.Y.S.2d 58, 62 (N.Y.Sup.Ct.1965) (holding that previous dismissal by federal court without prejudice based on plaintiff's failure to comply with discovery orders allowed protection of Section 205 for subsequent filing in state court); *see Dyer v. Cahan,* 150 A.D.2d 172, 540 N.Y.S.2d 785, 786 (N.Y.App.Div. 1989) (where prior wrongful death action was dismissed without prejudice for lack of diversity jurisdiction, neglect to prosecute, and failure to comply with scheduling order, extension available "in light of broad purpose for which CPLR 205(a) was intended....").

Plaintiff does not address this argument in his opposition papers.[4] Defendants, there-

---

4. Indeed, plaintiff's opposition papers, even when read generously in his favor, do not address specifically the issues remanded to this

Court by the Second Circuit. *See* Declaration of Joan Franklin Mosley in Opposition to Motion to Dismiss, sworn to on Feb. 22, 2002 ("Mosley

fore, ask this Court to deem conceded their assertion regarding Section 205's applicability. *See* Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss, at 3. However, as discussed above, the Court is satisfied that the record in this case would have supported dismissal with prejudice, and that therefore, the effective final dismissal of the Title VII claims would not have changed the Court's previous thinking on this matter. The Court will still dismiss the action without prejudice so that plaintiff may pursue whatever causes of action remain viable if he were to refile his action.

Although the effect of a Rule 41(b) dismissal with prejudice may seem inequitable to plaintiff, the case law is clear: the conduct of an attorney is imputed to his client, for allowing a party to evade "the consequences of the acts or omissions of [his] freely selected agent" "would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Link*, 370 U.S. at 633–34, 82 S.Ct. 1386. Indeed, "absent a truly extraordinary situation, the client is not excused from the consequences of his attorney's nonfeasance." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980); *see Johnson v. M. Melnick & Co.*, No. 91 Civ. 7961, 1996 WL 239994, at *10 (S.D.N.Y. May 8, 1996) (dismissing with prejudice plaintiff's Title VII and § 1981 claims under Rule 41(b) and Rule 37 and finding "no merit to the contention that dismissal of [plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on [plaintiff].") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)); *Akzona, Inc. v. Wientex Trading Co., Inc.*, No. 80 Civ. 3773, 1984 WL 397, at *2 (S.D.N.Y. May 10, 1984) (denying reargument over dismissal based on Rule 37 grounds, finding "there is no risk of punishing the client for the sins of its attorney.").

### B. *Error in Attribution of One Adjournment*

The Second Circuit also asks this Court to consider whether the error in attribution of the pre-trial conference adjournment to February 24, 2000 would have affected the Court's decision to dismiss the action. Based on the totality of the circumstances of this case, however, the incorrect attribution to plaintiff was, in essence, but one small factor among many in the calculation that led this Court to issue the sanction.

Plaintiff revisits this issue in his opposition papers, contending that "[t]he totality of events during this litigation will show that defendant and plaintiff both contributed to the prolongation of this litigation." Mosley Aff. at ¶ 8. However, the Court maintains its position as articulated in *Copeland I*:

> Although plaintiff may argue that some of the deadlines extended by the Court were changed at defendants' request, defendants' respectful and proper requests for enlargement of time do not excuse Ms. Mosley's dilatoriness. On similar facts, the Second Circuit has noted, "While both parties in fact were responsible for many delays during the pre-trial stage of the case, the court was warranted in finding that [plaintiff's counsel's] behavior was particularly egregious."

*Copeland I*, 194 F.R.D. at 132 n. 5 (quoting *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir.1993)). Defendants were continuously faced with Ms. Mosley's unexcused delays, thereby prejudicing defendants in their preparation for this trial. Indeed, "[p]rejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre*, 682 F.2d at 43. The Court's decision to dismiss the action was not based on one adjournment, missed deadline, or failure to follow a court order, but rather upon the totality of events throughout the course of the action. It is unfair to defendants, the Court, and future litigants, to countenance such blatant disregard for Court orders. *See Akzona v.*

Aff.''), at ¶¶ 1–9. The Court need not address issues completely collateral to the Second Circuit's remand, including plaintiff's statement in Paragraph 6 of the Mosley Aff. referencing plaintiff's counsel conducting discovery prior to the

March 1998 pre-trial conference, and plaintiff's statement in Paragraph 8 that he did not offer Dr. Yarbrough as an expert witness. *See* Mosley Aff. ¶¶ 6, 8.

*Wientex Trading Co., Inc.,* No. 80 Civ. 3773, 1984 WL 397, at *2 (S.D.N.Y. May 10, 1984) ("The credibility of [court orders] demands that the sanctions which they threaten be imposed on those who consciously defy them.").

### III. CONCLUSION

For the reasons stated herein, and after considering the issues set forth for remand by the Second Circuit, the Court hereby GRANTS defendants' motion to dismiss and plaintiff's action is DISMISSED WITHOUT PREJUDICE pursuant to Rules 41(b) and 16(f) of the Federal Rules of Civil Procedure.

**SO ORDERED.**