916 F.2d 759
 16 Fed.R.Serv.3d 431, 17 Fed.R.Serv.3d 1332,
63 Ed. Law Rep. 442
 Gail Elizabeth BOBAL, Plaintiff-Appellant,
v.
RENSSELAER POLYTECHNIC INSTITUTE, Board of Trustees of
Rensselaer Polytechnic Institute, Dr. Gerald Moss, Dr.
Punkaj K. Das, Dr. Donald S. Rodbell, Dr. Stephen E.
Wiberley, Dr. Edward J. Smith, Dr. Henry A. Scarton, Dr.
Allen Zelman, Dr. Gary Judd, Dr. William C. Jennings, Dr.
John B. Brunski, Defendants-Appellees.
 No. 852, Docket 89-7413.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 28, 1990.
Decided May 15, 1990.
Order on Rehearing Oct. 22, 1990.
 
 Gail Elizabeth Bobal, Edison, N.J., pro se.
 Miriam M. Netter (Pattison, Sampson, Ginsberg & Griffin, P.C., Troy, N.Y., of counsel), for defendants-appellees.
 Before OAKES, Chief Judge, FEINBERG and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff pro se Gail Elizabeth Bobal appeals from two dismissal orders and various other denials of relief entered against her by the District Court for the Northern District of New York (Neal P. McCurn, C.J.). Bobal advances three distinct arguments. First, she asserts that the district court erred when, pursuant to Fed.R.Civ.P. 12(b)(6), it dismissed with prejudice sixteen of her twenty causes of action and limited the relief available in one of the remaining four. Second, she argues that the district court abused its discretion when it dismissed with prejudice the remaining four causes of action as a result of plaintiff's violation of a discovery order, and then improperly refused to grant her relief from its final judgment pursuant to Fed.R.Civ.P. 60(b). Third, she argues that the court below abused its discretion by refusing to disqualify defendants' counsel.
 
 
 2
 We find no error in the district court's denial of Bobal's disqualification motion and its dismissal of the majority of her causes of action. Nonetheless we conclude that the district court abused its discretion by dismissing with prejudice the remainder of Bobal's suit without first warning this pro se plaintiff that such a harsh sanction was in the offing.
 
 BACKGROUND
 
 3
 The complaint in this action revolves around plaintiff's attempts to obtain a graduate degree in biomedical engineering from defendant Rensselaer Polytechnic Institute ("RPI"). She charges the school and members of its past and current faculty with, inter alia,
 
 
 4
 delaying, obstructing, and preventing her from obtaining her doctorate. [The suit's] nature can be described as a breach of duty to deal reasonably, fairly, and in good faith ... [with a student who] imparted her nonfunded scientific findings to the school. This case involves wrongful encumbrance of the student's intellectual property ... and a bad-faith breach of contract through malicious [sex] discrimination.
 
 
 5
 Just as she perceived conspiracies against her while a student at RPI--as her Amended Complaint makes clear--so too does plaintiff now see conspiracies within the court system designed to thwart her claims. She charges Judge McCurn with "impeachable offenses" and alleges that a recently adopted local rule for the Northern District of New York "was hastily written and enacted to prejudice her interests." She also bases her motion to disqualify defendants' counsel on an alleged conspiracy between opposing counsel and attorneys for the Legal Aid Society ("Legal Aid") with whom she once consulted, but who declined to represent her.
 
 
 6
 On December 20, 1985, after oral argument and in an opinion delivered from the bench and later memorialized in a two-page order, the district court dismissed sixteen of the twenty causes of action pleaded, and limited recovery under one of the remaining four. On May 14, 1987 Judge McCurn dismissed with prejudice the remainder of plaintiff's suit as a sanction for plaintiff's deliberate violation of a court order. His dismissal must be placed in its proper context.
 
 
 7
 On May 8, 1986, Judge McCurn held a status conference; Bobal did not appear because, she later said, she had never received the clerk's letter notifying her of the conference. The court then rescheduled the conference for June 4, 1986. At that conference, the district court attempted to fashion a discovery schedule for the action. He ordered Bobal to appear for her deposition on July 14 and 15, 1986. She stated that "I will not be available ... This is an improper conference and I am not a party to this conference." She then left the courtroom. Judge McCurn memorialized his discovery order on June 20, 1986. Bobal forthrightly admits that she violated the court order, but attempts to justify her conduct because she "conclude[d] that the order would irreparably prejudice her case."
 
 
 8
 Neither at the June 4 conference nor in the June 20 order did Judge McCurn indicate that Bobal's failure to comply with his order would result in the dismissal of her case. On September 4, 1986, by which time plaintiff had failed to contact defendants' counsel to attempt to reschedule her deposition, defendants moved to dismiss the case, pursuant to Fed.R.Civ.P. 16(f), 37(d) and 41(b). Judge McCurn granted the motion on May 14, 1987, and on July 6, 1987 denied Bobal's request to amend both his December 1985 order dismissing the majority of her claims and his May 1987 order dismissing the remainder.
 
 
 9
 On May 14, 1988, Bobal moved--presumably pursuant to Fed.R.Civ.P. 60 and the applicable ethical canons--to disqualify defendants' counsel, Miriam Netter, on the basis of Netter's past position as president of the Northeastern New York branch of Legal Aid, which Bobal had once contacted in an attempt to retain counsel to bring an action against RPI. The district court conducted a hearing on October 3, 1988. On January 28, 1989, the district court denied the motion and denied Bobal's request for reconsideration on June 17, 1989. This appeal followed.
 
 DISCUSSION
 
 10
 In more than eighty pages of appellate briefs, and with the organization and presentation of a six-hundred page appendix, Bobal proves herself capable of considerable legal research. Bobal's Amended Complaint, however, is not always clear, and its occasional confusion highlights the weakness of the majority of the dismissed claims. In examining Bobal's submissions, we are guided by the Supreme Court's mandate that pro se papers be held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), as well as our own instructions that "a pro se litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim." Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir.1984).
 
 
 11
 We must determine whether, given her pro se status and the potentially colorable nature of at least some of the dismissed claims, Bobal should have received what all parties agree was a harsh sanction. At the outset, we emphasize that appellant's charges of judicial misconduct remain conclusory and frivolous, and lack any support in the record. In fact, the record reveals that Judge McCurn displayed considerable patience with Bobal even as she displayed little with him--such as turning her back on the judge and walking out of his courtroom in the middle of a conference. Were Judge McCurn biased against the appellant, one might have expected him to grant defendants' original motion to dismiss the action in its entirety. Instead he carefully considered the motion and took pains to preserve four causes of action for further development. Those four claims include: misrepresentation; conversion; breach of contract; and interference with contractual relations, which was correctly limited--over plaintiff's objections--to acts of faculty members acting outside the scope of their employment.
 
 
 12
 We have examined the remaining claims in Bobal's Amended Complaint and substantially agree with the district court's conclusions. Several claims dismissed by the district court are not recognized in New York. Appellant cites no relevant authority--nor could we find any--to support her claims for the substantive torts of "abuse of discretion," "intimidation," "conspiracy" or "peonage." Other dismissed claims merely repeat and reallege wrongs properly subsumed within those claims the district court left intact in its December 1985 ruling. Plaintiff's "breach of promise," "abuse of power," "malfeasance," "trust and fiduciary duty" and particularly garbled "quasi contract liabilities" claims raise issues that are most properly and fully addressed in her breach of contract claim. Her "antitrust violations" claim is frivolous, and merely realleges the contentions raised in her contract and conversion claims.
 
 
 13
 Still other claims, even when read in the light most favorable to plaintiff, fail as a matter of law. Her claim of prima facie tort fails because she did not, and apparently could not in good faith, allege that the defendants were motivated solely by malicious motives. See, e.g., Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459 (1983). She alleges the tort of waste, yet that tort requires an injury to real property, which could not be alleged in this case, as plaintiff candidly admits; she instead envisions an extension of present law from real to personal property. Her "interference with prospective advantage" claim fails to plead the essential elements of the tort. See, e.g., Williamson, Picket, Gross, Inc. v. 400 Park Avenue Co., 63 A.D.2d 880, 405 N.Y.S.2d 709 (1st Dep't 1978), aff'd, 47 N.Y.2d 769, 417 N.Y.S.2d 460, 391 N.E.2d 296 (1979); Rosenberg v. Del-Mar Division, 56 A.D.2d 576, 391 N.Y.S.2d 452 (2d Dep't 1977). Her claims for "defamation and malicious injurious falsehood or disparagement" charge, in effect, slander, yet she fails to plead adequately the actual words spoken, publication or special damages. See, e.g., Goldberg v. Sitomer, Sitomer & Porges, 97 A.D.2d 114, 469 N.Y.S.2d 81 (1st Dep't 1983), aff'd, 63 N.Y.2d 831, 482 N.Y.S.2d 268, 472 N.E.2d 44 cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985).
 
 
 14
 Finally, her civil rights claim cannot withstand scrutiny as pleaded. Apparently, she attempted to charge a violation of 42 U.S.C. Sec. 1983, but cannot properly allege that any of the defendants acted "under color of state law." It remains clear, however, that Bobal has charged sex discrimination: "Faculty defendants agreed to and did conspire together for the purpose of depriving me of my civil rights of equal protection and equal privileges and immunities under the law and acted in their individual capacities ... [and were] motivated by discriminatory animus against me due to my female gender." It is possible to imagine a potentially colorable claim brought pursuant to Title IX of the Education Amendments of 1972, which forbids sex discrimination in federally funded education programs. 20 U.S.C. Secs. 1681-1686. While we of course do not reach the merits of such a claim, and indeed cannot determine from the record before us whether such a claim can be advanced in good faith, we have previously explained that a pro se plaintiff who brings a civil rights action "should be 'fairly freely' afforded an opportunity to amend [her] complaint, even if [she] makes the request after the court has entered judgment dismissing [her] original complaint." Satchell v. Dilworth, 745 F.2d at 785 (citation omitted). Accordingly, the district court erred by refusing to afford Bobal an opportunity to replead this single cause of action.
 
 
 15
 The district court dismissed the remainder of Bobal's action as a sanction for her failure to appear at her own deposition. The court based its dismissal of Bobal's actions on Fed.R.Civ.P. 16(f), 37(d) and 41(b). We review the dismissal only under Rule 37(d), which addresses a party's failure to appear for her deposition and thus specifically applies to the present case. There is no need to reach either Rule 16(f) or Rule 41(b). See Salahuddin v. Harris, 782 F.2d 1127, 1133-34 (2d Cir.1986) (" 'Rule 37 ... addresses itself with particularity to the consequences of a failure to make discovery.... There is no need to resort to Rule 41(b), which appears in that part of the Rules concerned with trials and which lacks such specific references to discovery.' ") (quoting Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958)).
 
 
 16
 The imposition of sanctions under Rule 37 "is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." John B. Hull, Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172, 1176 (2d Cir.1988). See also Sieck v. Russo, 869 F.2d 131, 134 (2d Cir.1989) ("We ... prefer to ... provide the teeth to enforce discovery orders by leaving it to the district court to determine which sanction from among the available range is appropriate.").
 
 
 17
 However, dismissal with prejudice is a harsh remedy to be used only in extreme situations, Theilmann v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir.1972), and then only when a court finds "willfulness, bad faith, or any fault" on the part of the prospective deponent. See Salahuddin v. Harris, 782 F.2d at 1132 (citation omitted). In Sieck we specifically noted that the district court order "included the warning that a default judgment in the full amount sought by plaintiff could be entered against any defendant who did not appear [for the scheduled deposition]." 869 F.2d at 133. In Schenck v. Bear, Stearns & Co., 583 F.2d 58, 59 (2d Cir.1978), this court reversed a district court's dismissal for failure to prosecute, noting that "there had been no ... judicial participation indicating that a dismissal might be in the offing." See also Jones v. Niagara Frontier Transportation Authority, 836 F.2d 731, 734 (2d Cir.1987) ("The Magistrate advised Jones that he was obligated to answer all questions ... [and] warned Jones that defendants might move for sanctions, 'because of what [he] construe[d] to be [Jones'] deliberate attempts to delay and frustrate the discovery in this case.' "), cert. denied, 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988).
 
 
 18
 As counsel for appellee forthrightly admitted at argument, Judge McCurn never gave appellant any such warning. It remains unclear why the first sanction in this case was the harshest sanction available. This is not to suggest that any district court would be unreasonable if it expressed some frustration with appellant's occasionally dilatory and disrespectful conduct. Nor is it meant to excuse such conduct. Yet pro se litigants are not generally familiar with the procedures and practices of the courts. While they have no right to ignore or violate court orders, they must nonetheless be made aware of the possible consequences of their actions. Under the circumstances of the present case, we conclude that before the district court could impose the harsh sanction of dismissal against this pro se litigant, it should have informed her that violation of a court order would result in a dismissal of her case with prejudice. We thus remand to the district court the four claims left intact in that court's original decision dismissing the majority of appellant's claims.[1]
 
 
 19
 Finally, Bobal's contention that appellee's counsel must be disqualified lacks merit. A failure to disqualify counsel will be overturned only upon a showing that the district court abused its discretion. Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir.1975). As we have previously explained,
 
 
 20
 [D]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code ... undermines the court's confidence in the vigor of the attorney's representation of his client, ... or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation....
 
 
 21
 Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir.1979) (citations and footnotes omitted).
 
 
 22
 Netter, counsel for defendants, served as the volunteer President of the Board of Directors of a Legal Aid branch office. At one point in this lengthy litigation, during which Bobal allegedly contacted more than seventy attorneys in an attempt to obtain legal representation, she contacted a Legal Aid staff attorney as well. At the hearing before the district court, Netter testified that she was never a staff attorney, never learned of Bobal's contact with the staff attorney, and had no opportunity to share whatever information that lawyer might have obtained. She explained that her only contact with clients occurred when they requested Legal Aid to take further action after it had already accepted the client's case in the first instance. Significantly, Bobal's case was never accepted by Legal Aid.
 
 
 23
 Netter's testimony was supported by the live testimony of Michael Foster, the Legal Aid staff attorney involved, and by the affidavit testimony of Denison Ray, the Legal Aid Executive Director, who outlined Netter's limited role at the organization. Judge McCurn clearly credited their testimony, determined that there was not even the potential for conflict, and denied Bobal's motion. In reaching this conclusion, Judge McCurn did not abuse his discretion. Appellant asks us to find a conflict of interest whenever a potential litigant consults a legal services staff attorney about a complaint against a possible defendant who is represented by a legal services Board member. We decline to adopt that holding, especially where, as here, the legal services agency refuses to accept the case and no evidence whatsoever has been advanced to suggest even a potential conflict.
 
 CONCLUSION
 
 24
 The district court's denial of Bobal's disqualification motion and its dismissal of the majority of her claims are affirmed. The four claims dismissed as a sanction are remanded to the district court, and appellant is to be afforded an opportunity to replead a fifth claim alleging sexual discrimination. We also take this opportunity to advise appellant, as well as all pro se litigants, that court orders--even those they think unwise--must be honored, and may be challenged on appeal in due course.
 
 ORDER ON REHEARING
 
 25
 On May 15, 1990, we affirmed in part and reversed in part orders entered by the District Court for the Northern District of New York (Neal P. McCurn, C.J.). Familiarity with our earlier opinion is presumed. Bobal v. Rensselaer Polytechnic Institute, et al., 916 F.2d 759 (2d Cir.1990). Our reversal of Judge McCurn's ultimate dismissal of this action as a sanction revolved around a conference held on June 4, 1986. At that conference, the district judge attempted to fashion a discovery schedule. He ordered Bobal to appear for her scheduled deposition. In response, she stated that she would not appear and then left the courtroom. Bobal candidly admitted that she violated the court order, but attempted to justify her conduct because she "conclude[d] that the order would irreparably prejudice her case."
 
 
 26
 We reviewed the dismissal pursuant to Fed.R.Civ.P. 37(d), which addresses a party's failure to appear for her deposition. The imposition of sanctions under that rule "is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." John B. Hull, Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172, 1176 (2d Cir.1988). From a review of the appendices filed by both parties, it appeared that Judge McCurn had not warned Bobal that a violation of his order would result in the harsh sanction of dismissal. Cf. Schenck v. Bear, Stearns & Co., 583 F.2d 58, 59 (2d Cir.1978) (reversing district court's dismissal for failure to prosecute, noting that "there had been no ... judicial participation indicating that a dismissal might be in the offing."). At the argument of this appeal and in response to a question from the court, counsel for appellees stated that Judge McCurn had not warned this pro se plaintiff that a dismissal might result from a violation of his order. Although appellant made use of her opportunity for rebuttal, she did not dispute appellees' response.
 
 
 27
 Subsequent to the issuance of our original opinion, appellant forthrightly notified this court that she had, in fact, been warned by Judge McCurn at the conference on June 4, 1986. At that conference, Judge McCurn told plaintiff that "[i]f you are not available, Bobal, for deposition as I direct you I will entertain a motion to dismiss your case ..." Based upon that concession, appellees moved to file an untimely petition for rehearing. Pursuant to Fed.R.App.P. 40, which provides that "a petition for rehearing will ordinarily not be granted in the absence of" a request from the court for an answer to the petition, we requested appellant to respond.
 
 
 28
 Our original opinion required that a warning be given to this pro se litigant before her case could be dismissed as a sanction for noncompliance with a discovery order, and we specifically relied on the district court's apparent failure to warn Bobal. In fact, as it now turns out, such a warning was given and we think the warning was adequate to inform her of the consequences of noncompliance. While it is true that the district court did not expressly state that the dismissal would be with prejudice, a pro se litigant would reasonably assume that to be the case and, particularly so, in the context in which the warning was given--one in which a dismissal without prejudice would have been virtually meaningless. We note also that Bobal has never voiced any belief that the dismissal warning meant anything other than dismissal with prejudice.
 
 
 29
 Therefore, we now grant appellees' petition for rehearing and amend our prior judgment. The district court's dismissal of Bobal's action as a sanction for her willful violation of the district court's discovery order is affirmed. We also acknowledge Bobal's candor and her willingness to bring all relevant facts to the court's attention.
 
 
 30
 Pursuant to Fed.R.App.P. 39(a), costs to appellees.
 
 
 
 [1]
 Given the disposition of the present appeal, we need not address the district court's denial of relief from its final dismissal order pursuant to Fed.R.Civ.P. 60(b)