**Rene S. HANDWERKER, Plaintiff,**

**v.**

**AT & T CORP. and American Telephone & Telegraph, Defendants.**

**No. 00 CIV. 4030(VM).**

United States District Court,
S.D. New York.

Sept. 30, 2002.

Order Denying Reconsideration
Nov. 6, 2002.

Rebecca Northey, Mussman & Northey, New York City, Rene S. Handwerker, Brooklyn, NY, Jason J. Rozger, Beranbaum, Menken, Ben–Asher & Fishel, L.L.P., New York City, for plaintiff.

Kristine J. Feher, Pitney, Hardin, Kipp & Szuch, L.L.P., Morristown, NJ, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Rene S. Handwerker ("Handwerker"), then *pro se,* filed this action on May 26, 2000 against defendant AT & T Corp. ("AT & T") alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et seq., state and local laws. Before the Court is AT & T's Motion to Dismiss the Amended Com-

plaint with Prejudice, pursuant to Federal Rule of Civil Procedure 37. Handwerker opposes the motion. The motion is granted for the reasons discussed below.

## I. BACKGROUND

To resolve the instant motion, the Court must summarize the dispute's long, unfortunate history. Handwerker's claims concern events that allegedly occurred during her employment at AT & T from 1981 through 1989. Filing her complaint on May 26, 2000 was timely, because, although she submitted a charge with the Equal Employment Opportunity Commission ("EEOC") on May 31, 1988, Handwerker did not receive the prerequisite right to sue letter until March 1, 2000. Handwerker amended the complaint on September 22, 2000, and served AT & T on October 25, 2000. AT & T answered on November 17, 2000.

The Court ordered an initial conference, pursuant to Federal Rule of Civil Procedure 16, be held on January 3, 2001. At the conference, Handwerker stated that she was ill and unprepared to proceed, and requested more time. The Court accommodated her by scheduling a follow-up conference to occur on February 2, 2001.

On the adjourned date, Handwerker requested additional time in order to attend to her health and seek counsel. She proposed that the case be placed on the suspense calendar for three to six months. The Court, over AT & T's opposition, granted the request and suspended the case for sixty days. Handwerker thereafter requested an extension of the suspense period for several more months. The Court, again rejecting AT & T's objections, granted Handwerker a thirty-day extension, and ordered the parties to appear at a status conference on April 12, 2001.

At the April conference, held almost an entire year after the case was first filed, Handwerker continued to appear *pro se*, although among the reasons she had offered in support of her numerous requests for extensions was an opportunity to retain an attorney. Ms. Handwerker gave no indication then that she had taken any meaningful steps to seek counsel. Nonetheless, the Court entered a scheduling order and civil case management plan pursuant to Fed.R.Civ.P. 16 (the "April Plan"). As a part of the process of scheduling dates, the Court explained to Handwerker the process and obligations of discovery. According to the April Plan, fact discovery was to be completed by September 30, 2001, a period sufficiently extended to accommodate Handwerker's health concerns and *pro se* status as well as her representations that she would seek to retain counsel during that time.

Despite the passage of time and relative simplicity of the case, to date the parties have not advanced past the discovery period. On April 18, 2001, AT & T served Handwerker with interrogatories, initial requests for production of documents and a notice of deposition. On May 11, 2001, Handwerker served AT & T with her initial requests for documents.

In June of 2001, Handwerker again asked the Court for an extension of the discovery deadlines, stating that her health remained poor and that she continued to seek an attorney to represent her in this case. AT & T opposed the request. The Court granted a "final extension of sixty (60) days, to November 30, 2001, for the completion of discovery" and expressed its dismay at receiving yet another request that would delay the resolution of a dispute whose operative events occurred in the 1980's.

AT & T responded to Handwerker's initial requests on October 4, 2001, providing access to its documents at its law firm's office in New Jersey. At a conference before the Court on October 5, 2001, the parties expressed their concerns regarding the status of discovery. By that time Handwerker had not yet answered the discovery requests AT & T had served in April of that year. Handwerker stated that she was continuing to seek counsel but that her efforts had been set back by the events of September 11, 2001. The Court reminded her that her numerous requests for extensions based in part on her continuing search for an attorney had long pre-dated the general effects of the September 11 tragedies. The Court ordered

Handwerker to respond to AT & T's written discovery requests by October 31, 2001.

On October 29, 2001, Handwerker requested another extension of fact discovery "for at least thirty days" because she was on the verge of obtaining counsel. The Court, in a memorandum endorsement, granted a two-week extension, opposed by AT & T, for the completion of fact discovery, and stated that no further extensions would be considered. Thus Handwerker's responses to AT & T's discovery requests became due on December 15, 2002.

Even so, in mid-November 2001 Handwerker, through an attorney she had just retained, requested a thirty-day extension of fact discovery. The Court denied this request. Given its numerous prior extensions, the warning that no more enlargements would be considered, and the time still available to complete discovery by the deadline then in effect, the Court considered another extension inappropriate.

Handwerker then signed responses to AT & T's interrogatories and document requests on November 15, 2002. AT & T received partial responses to interrogatories the following day. However, Handwerker declined to supply the requested information regarding her current employment, earnings or benefits subsequent to the end of her employment at AT & T (the "Subsequent Employment Information"). For unknown reasons, AT & T did not receive Handwerker's documents until it received one production on November 26, 2001, and an additional production on December 4, 2001. Handwerker failed to provide any documents in response to AT & T's requests for documents pertaining to Subsequent Employment Information.

After conferring with Handwerker, AT & T brought to the Court's attention Handwerker's failure to respond to discovery requests concerning Subsequent Employment Information. In response, the Court ordered Handwerker to produce such information prior to the continuation of her deposition, and reminded her that: "Failure to comply may warrant an application for appropriate sanctions under Fed.R.Civ.P. 37." (*See* Order, dated December 4, 2001 [Doc. No. 21].) Later on the same day, to address Handwerk-

er's objections grounded on reasons of confidentiality, the Court reiterated its order that Handwerker produce such information and documents, stating that her concerns "about privacy may be addressed in an appropriate confidentiality agreement." (*See* Order, dated December 4, 2001 [Doc. No. 22].)

Meanwhile, from June to November of 2001, Handwerker avoided deposition. In November, due to its late receipt of discovery documents, AT & T requested and received an adjournment of the deposition, which finally occurred on December 6, 2002. Because that one session did not provide AT & T with an adequate opportunity to address all relevant issues and Handwerker had not yet produced the Subsequent Employment Information, AT & T appealed to the Court for authority to continue the deposition and an extension of the discovery period for that purpose. The Court granted an extension through January 15, 2001, for the limited purposes of allowing Handwerker to disclose the information she. still withheld, and of completing Handwerker's depositions and those of two former AT & T employees.

At the conference before the Court on December 14, 2001, the Court reviewed the status of discovery with the parties. Handwerker continued to object to producing the discovery material still outstanding. The Court found that the equities of the situation required that certain discovery already in process should be completed. Accordingly, the Court directed Handwerker to comply with its disclosure Orders and extended the parties' time to complete the depositions of Handwerker and AT & T's former employees to February 28, 2002.

By that date, the parties were still unable to complete discovery. On January 17, 2002, the parties submitted a joint letter to report their continuing impasse over the discoverability of Subsequent Employment Information. Handwerker refused to provide the contact information regarding her present employment, where she apparently has worked since her termination from AT & T, because she believed it would "lead to embarrassment and vexation with regard to her present position." (*See* Letter to the Court

from Jason J. Rozger ("Rozger") and Kristine Feher, dated January 17, 2002.) Still, Handwerker did not propose any confidentiality agreement as had been directed by the Court in early December 2001.[1] The Court denied Handwerker's application to withhold such information, stating that Handwerker sought to reopen a matter the Court had already resolved. (*See* Order, dated January 17, 2002; *see also* Order, dated December 4, 2001.) Thus, Handwerker did not provide the Subsequent Employment Information by the last-extended close of discovery.

Moreover, after the initial, incomplete session on December 6, 2001, Handwerker never made herself available for deposition by the February 28, 2002 deadline, although she attended the deposition of AT & T's witnesses held in Virginia. Handwerker did not provide alternate dates for deposition in response to AT & T's deposition notices and inquiries.

At the end of the discovery period, Handwerker's counsel moved to withdraw from representation, asserting that the attorney-client relationship had deteriorated and that Handwerker "insists on pursuing a course of action in this litigation that is contrary to our repeated advice, and despite our repeated warning of the consequences of such course of action." (Rozger Aff., at ¶ 2.) Specifically Handwerker's attorney asserted that Handwerker, "in an effort to avoid the scheduling of her deposition, has failed to return our phone calls until the day we needed to confirm the deposition has passed." (Letter to the Court from Rozger, dated February 20, 2001 (the "Rozger Letter")).

Handwerker opposed Rozger's motion, stating that it was "financially motivated" and that the only disagreement was her continued refusal to disclose any Subsequent Employment Information. (*See* February 2002 Letter.) The Court granted counsel's

motion and yet again extended Handwerker's time to comply, ordering that fact discovery conclude on March 31, 2002, and warning that: "If, by March 31, 2002, Handwerker has not complied with the Court's Discovery Orders, including those dated December 5, 2001 and January 22, 2002, the Court will entertain a motion for appropriate sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, which may include, if warranted, dismissal of this action." (Order, dated March 13, 2002.)

Handwerker did not proceed with discovery by the March 31, 2002 deadline as ordered. AT & T proposed several new dates for her deposition and repeated its discovery requests for the Subsequent Employer Information; but Handwerker did not make herself available for deposition nor did she forward any additional discovery responses. Instead, on April 1, 2002, Handwerker entered an appearance through new counsel and requested an extension of time to complete fact discovery. The Court denied the request and granted AT & T leave to file a motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. (*See* Order, dated April 2, 2002.)

AT & T filed the instant motion, which Handwerker opposes. During the motion's pendency, Handwerker belatedly provided some documents and information regarding Subsequent Employment Information. Further, Handwerker claims she now "agreed to make [her]self available on any date ...." for completion of her deposition. (*See* Declaration of Plaintiff Rene S. Handwerker in Opposition to Motion to Dismiss, dated July 30, 2002.) AT & T declined to consider the discovery or any confidentiality agreement until its pending Rule 37 motion is resolved.

## II. *DISCUSSION*

AT & T charges that Handwerker has failed to comply with discovery obligations,

---

1. Handwerker and her former attorney differed on whether the failure to propose a confidentiality agreement was a part of Handwerker's intransigence or her attorney's performance. (*See* Letter to the Court from Jason J. Rozger and Kristine Feher, dated January 17, 2002; *see also* Letter to the Court from Renee S. Handwerker, dated February 27, 2002 (the "February 2002 Letter"); Affirmation of Jason J. Rozger, dated March 7, 2002 (the "Rozger Aff."), at ¶ 5.) Read-

ing the record as a whole, it appears that Handwerker herself took the position that Subsequent Employer Information was not relevant and therefore not discoverable. As such, it seems that a confidentiality agreement could not bridge the gap between Handwerker's position and AT & T's legitimate pursuit of information that may lead to the discovery of admissible evidence, and counsel's failure to draft such a document does not excuse Handwerker from responsibility.

and numerous Orders of this Court. Thus, according to AT & T, although Handwerker has not abandoned her case, she has obstructed and unduly prolonged it to AT & T's prejudice. Handwerker asserts that dismissal, the most extreme sanction, is not warranted in this case.

Rule 37 of the Federal Rules of Civil Procedure sets forth the Court's procedures for enforcing discovery and sanctioning misconduct. If a party fails to appear at a deposition after having been properly notified, "to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories ... [or] to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just ...." Fed.R.Civ.P. 37(d). The moving party must provide a certification that it has, in good faith, conferred or attempted to confer with the disobedient party in an effort to obtain such answer or response without court action. *See id.*

If a Court grants a motion made under Rule 37(d), it has broad discretion to impose sanctions as it considers just, including an order: (A) designating certain facts be taken as established; (B) refusing the disobedient party from introducing evidence or claims; and (C) striking pleadings, staying the litigation until the obligation is satisfied, dismissing the action, or of default. *See* Fed. R.Civ.P. 37(d). Reasonable expenses, including attorney's fees, also may be awarded against the party and/or the attorney failing to act, unless the court finds that the failure "was substantially justified, or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(d).

Numerous factors are relevant to a district court's exercise of its broad discretion to order sanctions under Rule 37, including: (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance. *See Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852–54 (2d Cir. 1995).[2] In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir. 1979); *Baker v. Ace Advertisers' Service, Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y.1992) (dismissing complaint for willful and bad faith violations of Magistrate Judge Orders). The Court may consider the full record in the case in order to select the appropriate sanction. *See Diapulse Corp. of America v. Curtis Pub. Co.,* 374 F.2d 442 (2d Cir.1967); *International Mining Co. v. Allen & Co., Inc.,* 567 F.Supp. 777, 789 (S.D.N.Y.1983).

The *pro se* status of a non-compliant litigant does not relieve her of any discovery obligations. *See Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir.1990) ("[A]ll litigants, including *pro ses,* have an obligation to comply with court orders.") (internal quotation and citation omitted). Thus, giving appropriate recognition as necessary to the difference of status, Rule 37 sanctions may be applied

**2.** The Rule 37 factors are similar to the factors a court considers when determining whether involuntary dismissal for failure to prosecute is warranted under Federal Rule of Civil Procedure 41(b). *See Martin v. Metropolitan Museum of Art,* 158 F.R.D. 289, 292 (S.D.N.Y.1994) (factors include " 'the duration of the plaintiff's failures, whether plaintiff had received notice that further delays would result in dismissal, whether the defendant is likely to be prejudiced by further delay, ... the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard ..., and the efficacy of lesser sanctions.") (citing *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988)); *see also Jackson,* 22 F.3d at 74–75. As reflected in Rule 41(b), it is the plaintiff's duty to prosecute a case and her failure to do so may warrant dismissal. *See* Fed.R.Civ.P. 41(b); *see also Jackson v. City of New York,* 22 F.3d 71, 74–75 (2d Cir.1994).

to *pro se* litigants no less than to those represented by counsel. *See id.; see also Valentine v. Museum of Modern Art,* 29 F.3d 47, 49–50 (2d Cir.1994) (affirming dismissal with prejudice of *pro se* litigant's complaint pursuant to Rule 37).

▮ The sanctions of striking pleadings and dismissal are the most extreme sanctions available. *See National Hockey League,* 427 U.S. at 643, 96 S.Ct. 2778. Dismissal is appropriate "only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Hochberg v. Howlett,* No. 92 Civ. 1822, 1994 WL 174337, *3 (S.D.N.Y. May 3, 1994) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) and *Cine Forty–Second Street,* 602 F.2d at 1068). Additionally, it is incumbent on the Court to ensure that the disobedient party had notice that its conduct risked dismissal and had an opportunity to be heard. *See Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990).

▮ Non-compliance may be deemed willful "when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Bambu Sales,* 58 F.3d at 852–53 (citing *Societe,* 357 U.S. at 212–13, 78 S.Ct. 1087 and *Jones v. Niagara Frontier Transp. Authority,* 836 F.2d 731 (2d Cir.1987)). In addition, "a party's persistent refusal to comply with a discovery order" presents sufficient evidence of willfulness, bad faith or fault. *Monaghan v. SZS 33 Associates, L.P.,* 148 F.R.D. 500, 509 (S.D.N.Y.1993) (unexcused failure to comply with two discovery orders warranted dismissal).

A. *REASON FOR THE NON–COMPLIANCE*

▮ Here, the Court ordered Handwerker to produce the Subsequent Employment Information on at least four occasions. (*See* Orders, dated December 4, 2001; Order, dated January 17, 2002; Order, dated March 13, 2002.) As reason for her refusal to comply, Handwerker asserted concern that any AT & T inquiry of her subsequent employer(s) would be vexatious, embarrass her and could endanger her current employment. The Court fully considered these apprehensions when Handwerker first raised them and ruled unambiguously at the time that they were insufficient to warrant refusal to provide the information requested.

The potential for some discomfort or chagrin is endemic to litigation. Any plaintiff who prosecutes an action must expect to encounter and make necessary adjustments to address that prospect when it does arise. In this regard, plaintiffs hold a distinct edge over defendants: the ability to weigh how much exposure to unavoidable discomfiture and risk they may be prepared to endure, and to voluntarily abandon the action at the point when that threshold may be crossed. To empower plaintiffs unilaterally to impose limits on the proper bounds of inquiry into relevant personal matters during pre-trial discovery would be intolerable and unfair to defendants, who do not possess the ultimate option of walking away at will from the litigation. Nor would it serve the efficient administration of justice. Such a power would enable plaintiffs deliberately to prolong the prosecution of a case and gain any resulting edge they perceive by invoking fear of disclosures they deem irksome, mortifying or even damaging as a shield against discovery.

Insofar as these concerns may have any validity in a particular case, they may be addressed by an appropriate confidentiality agreement between the parties. Here, the Court informed Handwerker on December 4, 2001 of the proper course to follow to allay her concerns. (*See* [Doc. No. 22].) Handwerker proposed no response either through her attorneys or as a *pro se* plaintiff, prior to the once-more extended deadline imposed by the Court's December 14, 2001, January 17, 2002, January 22, 2002 and March 13, 2002 Orders. Her failure to act on her own behalf to mitigate her apprehensions belies the good faith of her stated concerns.

While the outstanding discovery relates to one discrete area of inquiry—the Subsequent Employment Information—it encompasses potential evidence that may bear relevantly

on Handwerker's record as an employee and impact materially on the extent of any damages she claims to have suffered by reason of her termination by AT & T approximately fourteen years ago. Because this information is so integral to the viability of Handwerker's claim, refusing its disclosure has unduly extended the completion of Handwerker's deposition. The Court considers Handwerker's withholding of vital information and failure to respect numerous Court Orders in this regard as entirely inexcusable. Her belated offer to comply after the expiration of the deadline the Court's last Order imposed is now unavailing.

## B. *EFFICACY OF LESSER SANCTIONS*

The most extreme sanction clearly serves the greater deterrent purpose of Rule 37, but may not always reflect the equities of the situation. As Handwerker argues, dismissal with prejudice would not account for Handwerker's eleventh-hour conversion indicated by her late production of discovery and purported willingness now to be deposed.

The Court is not persuaded that in this case any of the recognized lesser sanctions will effectuate any of Rule 37's goals. Because Handwerker has refused to identify or make available her Subsequent Employer Information, no fact is available to take as established. Thus, that sanction provides AT & T with no suitable relief. Nor will precluding Handwerker from introducing evidence provide an effective remedy because the misconduct at issue is Handwerker's self-serving withholding of information that may assist AT & T prepare its case. Again, because Handwerker refused to supply critical information, it is not clear what particular portion of the pleadings should be stricken.

Handwerker's actions have already delayed the proceedings far longer than is reasonably tolerable or excusable. Therefore, to order another delay increases the staleness of the matter and exacerbates the prejudice already caused by Handwerker's delays and misconduct. Finally, as elaborated on below, because of the seriousness of the noncompliance, and the extreme prejudice it has already engendered both to AT & T and to the administration of justice, the Court does not regard a monetary sanction as adequate to serve the purposes of Rule 37(d) under the circumstances of this case. Accordingly, because no lesser sanction provides fitting relief, the Court returns to the sanction of dismissal.

## C. *PREJUDICE TO THE OTHER PARTY*

Handwerker's self-serving refusal to provide certain information prejudices AT & T in the preparation of a defense. As the Court advised Handwerker when this issue first arose, the information that AT & T seeks from any subsequent employer in a discrimination case is discoverable, as it may lead to admissible evidence that may be relevant to the issues such as legitimate, non-discriminatory reasons for termination and/or mitigation of damages. (*See* [Doc. No. 22].) Thus, to the extent that Handwerker has prevented AT & T from obtaining such information, she has hindered AT & T in defending itself.

## D. *DURATION OF THE NONCOMPLIANCE*

Handwerker has persistently refused to provide Subsequent Employment Information or make herself available for a full deposition. AT & T repeated its requests for the outstanding discovery and proposed new dates for her deposition at regular intervals. During this time, Handwerker's responses, if she responded at all, were elusive. She did not propose a confidentiality agreement nor alternate dates for deposition. Handwerker's intransigence is the sole reason that discovery was not concluded in December of 2001, after the numerous extensions the Court had already granted to accommodate her various requests and special circumstances. Instead, the case has persisted without resolution for over nine months that were beset by motion practice on procedural matters. The merits of the matter are yet untouched. This factor weighs in favor of dismissal with prejudice.

## E. *NOTICE OF CONSEQUENCES TO THE NONCOMPLYING PARTY*

The first sanction imposed by the Court should not be the most extreme one. Rath-

er, the noncompliant litigant should be given first some warning that her misconduct risks dismissal. *See Bobal,* 916 F.2d at 764.

Here, the Court warned Handwerker more than once that her failure to comply with discovery risked Rule 37 sanctions. (*See* Order, dated December 4, 2002.) The Court specifically warned, in terms clear and unambiguous, that failure to comply with the Court's Orders dated December 4, 2001 and January 22, 2002, risked dismissal pursuant to Rule 37. (*See* Order, dated March 13, 2002.) Handwerker's former attorney acknowledged having given her "repeated warnings of the consequences of [her] course of action" in pursuing a litigation strategy contrary to counsel's repeated advise, which specifically pertained to the disclosure of the Subsequent Employment Information. More compelling, her former counsel's communication reveals that Handwerker's noncompliance was not inadvertent nor caused by circumstances beyond her control, but that she was fully aware of the circumstances and purposely avoided scheduling her deposition until the deadline had passed. (*See* Rozger Letter.) And Handwerker herself admitted that her recalcitrance regarding the Subsequent Employment Information was one cause of the breakdown of her attorney-client relationship with her former attorneys. (*See* February 2002 Letter.)

AT & T, too, has reminded Handwerker of her discovery obligations, and the risks associated with noncompliance, in its multitude of correspondence to Handwerker concerning her failure to provide discovery. Thus, Handwerker has received adequate and unequivocal notice from multiple sources that dismissal and other negative consequences may flow from refusal to comply with Court Orders.

## F. BALANCING

On balance, the Court concludes that Handwerker's conduct warrants sanction. Because the lesser authorized sanctions would not remedy her noncompliance or discourage further misbehavior, the Court must adapt the most severe sanction to the situation at hand. Handwerker's belated production of discovery that may or may not be complete does not save her conduct of the past nine months from sanction. The three purposes of Rule 37 are best effectuated by an order of dismissal.

In so concluding, the Court finds several considerations most compelling. First is the severity and duration of Handwerker's noncompliance. Apparently against the advice of her own counsel, she declined to obey not one but as many as six separate Court Orders issued over a period of more than four months and directing the same performance. Handwerker's refusal therefore demonstrates willfulness and bad faith rather than some innocent, readily pardonable behavior.

The effective administration of justice is necessarily rooted on unremitting respect for a court's valid orders by all concerned. This principle uniquely governs the conduct of the parties to an action within a court's jurisdiction. Absent unequivocal adherence to the court's rulings at all stages of litigation, the entire adjudicatory system would be severely compromised. The power to command embodies the tandem power to exact compliance with what is properly ordered, as necessary by means of measured, meaningful compulsion. No system of governance can long endure defiance disproportionately condemned. And so, no Court can countenance a litigant's contempt of its lawful orders or suffer the party's disdain with impunity without eroding confidence in its office and diminishing the integrity of the rule of law. As perceived by other interested litigants and the general public, a court's condoning of any grave misconduct can severely affect the social order. Precisely in recognition of these concerns, the law embodies the principle that courts have inherent power to enforce compliance with their lawful orders through civil contempt. *See Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990) (quoting *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) and *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.1981)).

Here, the Court must take into account that, over AT & T's repeated objections, it granted Handwerker numerous extensions to accommodate her various requests and asserted special circumstances. Despite these

solicitudes, Handwerker refused to comply with this Court's repeated clear and unambiguous Orders directing production of withheld discovery and completion of her deposition. The Court warned Handwerker more than once, in terms equally clear and unambiguous, of the seriousness of the consequences that may follow. The final admonition prompted AT & T's apparent reaction that, after more than a year of constant extensions, delays and noncompliance, enough was enough, and probably gave rise to a warranted expectation that AT & T could avail itself of an appropriate remedy the under federal rules. Absent more suitable alternatives to achieve the various ends at play here, a flaccid or equivocal response from the Court at this juncture would demonstrate toleration of prejudicial misbehavior by a party, and potentially may be construed by Handwerker or other litigants as a license to disregard the Court's authority in the future.

Moreover, Handwerker's intransigence relates not to an inconsequential issue or ancillary procedure, but to a critical phase of pretrial discovery proceedings that puts the proof of a dispute to the test: plaintiff's response to the production of relevant information and availability for deposition. This stage of the process is one that, if unreasonably obstructed, inevitably prolongs resolution of the conflict and thereby carries an inherent potential to prejudice other parties and to frustrate judicial economy.

The Court also considers important a concern expressed by AT & T and raised by the Court itself repeatedly to Handwerker as a reason for demanding more diligence on her part in the prosecution of this action. The events that gave rise to the discriminatory conduct Handwerker alleges in her complaint occurred at least fourteen years ago, during a period spanning from 1981 to 1988. Such a long passage of time inevitably impairs the completeness of a litigation record and the reliability of evidence. In the nearly fourteen years that have elapsed so far since her termination from AT & T, memories have faded, witnesses may have moved or passed away, and documents and other evidence may not be available in the most useful form.

This circumstance tends to work against institutional litigants that must rely on the evidence of multiple individuals who are not parties to the action and who otherwise do not have an abiding stake in the matter. Thus, when the conflict finally comes to trial, while individual plaintiffs who have harbored a longstanding complaint generally remain ready in person to convey self-serving accounts of events that may still seethe rancorously in their minds, such defendants cannot always count on the availability of testimony comparably motivated. Instead, they generally must rely upon the evidence of more dispassionate witnesses who may have had no reason or incentive to maintain as indelible and biased a recollection of incidents long since passed in which their roles and interests may have been far less consequential than those of plaintiffs.

In this regard, it is relevant to consider that were this Court to continue extending Handwerker more opportunities for compliance, the action will not necessarily be ready for immediate resolution on the merits. Handwerker's deposition would have to be completed and any other outstanding or potential fact discovery matters, as well as any contemplated expert reports and depositions, would need to be resolved before the case is ready for trial. Assuming the swiftest response from both sides, a dubious supposition in this case given its record to date, many more months will pass before this Court could realistically anticipate a trial to commence.

However, AT & T has already put Handwerker and the Court on notice that upon conclusion of all discovery, whenever that occurs, it expects to file a motion for summary judgment. That course could result in a further delay of a trial of as much as one year beyond the close of all discovery. Consequently, in either event, by the time the underlying dispute would be ready for trial, assuming it survived a summary judgment motion, the operative facts will have been in excess of fifteen years in the past. To this degree, allowing the matter to proceed would only enhance the potential prejudice to the defense. By then, in the additional passage of time on a matter already hindered by

delays, the weakness or staleness of the evidence may have enlarged exponentially, rendering it even more difficult for a trier of fact to sort out the truth. Insofar as the risk and prejudice from a faulty verdict would have to be borne by AT & T on account of circumstances that either by design or effect could be directly attributable to Handwerker's delaying tactics, intransigence in refusing to comply with repeated Court-ordered requests for discovery, and willful failure to prosecute her claims diligently, continuation of this action could not be justified. It would not serve the interests of justice for the Court effectively to reward Handwerker or otherwise place her at a strategic advantage by reason of her bad faith and deliberate defiance of the Court's clear and unambiguous Orders on numerous occasions.

The Court also notes that before this action was commenced more than two years ago, approximately twelve years already had passed since Handwerker's termination from AT & T during which her resultant charge of discrimination had languished at the EEOC. The Court cannot properly speculate as to the reasons why Handwerker's processing of an administrative complaint would be prolonged for such an extended time. Although delays in resolving EEOC cases may be commonplace, and the grounds for complainants to retard active pursuit of available legal remedies undoubtedly varies, a delay of this magnitude appears well out of the ordinary.[3] Such exceptional delay raises questions as to the degree to which it may be reasonably inferred that Handwerker's earlier prosecution of her grievance may have been characterized by procrastination or lack of diligence and whether the prolongation of the litigation of this case may reflect a continuation of the same pattern.

This circumstance points to one of the unexplained anomalies surrounding Handwerker's conduct. Common sense and experience would suggest that a person who has been wronged by another's alleged misconduct and has nurtured the grievance for over a decade while waiting for her day in court, would display intense alacrity in prosecuting her claims to swift resolution when at last the long-expected moment arrives, and would be intolerant about suffering any further delays. That is the traditional behavior pattern plaintiffs generally exhibit, while it is more often the tactic of defendants to drag their feet in responding to litigation. Apparently, for reasons not entirely clear to the Court, the more customary practice has been inverted in this case. Even going on the fifteenth year of gestation of her claims, the plaintiff here has seemed less than vigorous in pursuit of a final judgment on the merits. Perhaps ignoring the reality that time, a multi-edged sword, could just as well work against her, she appears to retreat each time the day of reckoning nears, while it has been the defendant who has strenuously objected to delays and has pressed for shorter extensions and earlier resolution.[4] Whatever the underlying reasons for the incongruence, to the extent there may have been any unreasonable delay in Handwerker's pursuit of this litigation predating its filing with the Court that may have been attributable to Handwerker's tactical decisions, her continuation of the same dilatory course here would have a cumulative effect substantially prejudicial to AT & T.

### III. ORDER

For the foregoing reasons, it is hereby

ORDERED that AT & T's motion for sanctions pursuant to Federal Rule of Civil Procedure 37(d) is granted; and it is finally

---

3. Under existing EEOC procedures, a complainant dissatisfied with unreasonable delays in the processing a charge may request issuance of a Right to Sue Letter and proceed directly to file a complaint in federal court. *See* 28 C.F.R. § 1601.28(a). Handwerker was given notice of this option when she filed her claim with the EEOC. (*See* Compl., at Ex. 13 ("If you ask for a Notice of Right to Sue... EEOC will issue a Notice to you after 180 days have passed from the date you filed your charge.").)

4. It goes beyond the purview of this ruling for the Court to hypothesize concerning Handwerker's motivations, although the anomalous role reversal noted here calls to mind the phenomenon manifest in William Faulkner's famous tale of the ritual hunt year after year for the legendary bear that, at last encountered face to face and visible in the gunsight, proves to serve a greater value alive as symbol and social rite than dead as the prize of pursuit.

**ORDERED** that the Clerk of Court dismiss this action with prejudice and close the case.

**SO ORDERED**.

### DECISION AND ORDER

By Decision and Order dated September 30, 2002 (the "Decision")[1] the Court granted defendant AT & T's motion to dismiss this action with prejudice pursuant Federal Rule of Civil Procedure 37(d) for the repeated failure of plaintiff Rene S. Handwerker ("Handwerker") to comply with orders of this Court directing discovery. Handwerker now moves for an Order pursuant to Local Civil Rule 6.3 granting reargument or reconsideration. For the reasons set forth below, the motion is denied.

 Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys., Inc. Sec. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000). Under Local Rule 6.3, which governs motions for reconsideration, the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision. *See Lichtenberg v. Besicorp Group Inc.*, 28 Fed.Appx. 73, 74, 2002 WL 109483, *1 (2d Cir. Jan.25, 2002); *SEC v. Ashbury Capital Partners, L.P.*, No. 00 Civ. 7898, 2001 WL 604044, (S.D.N.Y. May 31, 2001) (citing *AT & T Corp. v. Comty. Network Servs., Inc.*, No. 00 Civ. 316, 2000 WL 1174992, at *1 (S.D.N.Y. Aug.18, 2000) and Local Rule 6.3). Local Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost motion with additional matters." *See id.* (citing *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. *See Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 150 (S.D.N.Y. 1999); *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (noting that a motion for reconsideration is not an opportunity for the moving party "to argue those issues already considered when a party does not like the way the original motion was resolved.").

 Here, Handwerker's request cites no controlling law or factual matters the Court overlooked that might reasonably be expected to alter the outcome of the Decision. In fact, the Court took into account and rejected the various considerations Handwerker asserts as grounds for her motion.

Handwerker cites a statement in the Decision asserting that she began working for her current employer upon her termination by AT & T in 1989, whereas in fact her present employment commenced in 1998. The Court does not consider this inaccuracy material, relevant nor sufficient to alter the outcome of the Court's ruling. When the Court determined that the information AT & T had requested concerning Handwerker's current employer was discoverable and directed Handwerker to produce it, the Court's decision was not based in any way on the duration of that employment. The Court made no qualitative judgment as to whether or not the information AT & T requested was or was not "vital" to AT & T, nor as to whether it mattered how long Handwerker had been employed. Such assessment is immaterial to a determination under the Federal Rules of Civil Procedure concerning whether any particular information is subject to discovery. The applicable standard, as the Court reminded Handwerker, is whether or not the matter is relevant and appears reasonably likely to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(a) and (b).

That Handwerker had been working at her current job for three rather than nine years is entirely beside the point. The argument

---

1. The Decision is report as *Handwerker v. AT & T Corp.*, 211 F.R.D. 203 (S.D.N.Y.2002).

does not address the fact that on numerous occasions, fully warned of the consequences, Handwerker defied the Court's Orders directing her to produce information concerning the identity and relevant particulars describing any employment she had following her departure from AT & T. Nor does it alter the essential principle the Court applied in this regard: that it was not up to the Handwerker, by repeated failure to comply with the Court's Orders, unilaterally to impose limits on the proper bounds of discovery. *See Handwerker*, 211 F.R.D. at 209.

Second, Handwerker refers to the state of her health as a factor impairing her ability to proceed and alleges that the Court does not mention this consideration. To the contrary, the Court specifically acknowledged the numerous occasions during the course of more than a year when Handwerker requested extensions allegedly based on health considerations. *See id.* at 206. The Court granted those additional extensions to complete discovery in order to accommodate Handwerker's medical needs. *See id.*

Handwerker next endeavors to fault the quality of her former counsel's representation as reasons for her failure to comply, alleging that she was not adequately apprised of her obligation to produce the court-ordered discovery without further delay. The Court finds this self-serving argument, and the allegations on which it is based, disingenuous and unpersuasive. Handwerker was reminded by the Court directly on numerous occasions of her duty to produce the discovery at issue, and of the insufficiency of her reasons for withholding it. *See id.* at 205–06. Her former counsel acknowledged in correspondence to the Court, of which Handwerker received copies, that he had warned her of the consequences of not complying. *See id.* Despite these numerous explicit instructions, Handwerker continued to stall and refuse to comply.

Finally, Handwerker asserts that she had substantially complied with the Court's final Order prior to the filing of AT & T's motion and that the delays were not all of her making. The Court disagrees. Handwerker's belated efforts to comply were not sufficient to overcome her longstanding intransigence. While the Court acknowledged attempts by Handwerker to produce some information on the final Court-imposed discovery deadline, it is undeniable that she had not fully produced all of the relevant information by then, and that she had not made herself available by to conclude her deposition. The Court's numerous Orders had directed Handwerker to *complete* all discovery, including her deposition, by the final date of March 31, 2002, rather than merely to begin making herself available at a later date, and offer self-selected portions of the information she had been ordered to produce months before. Neither is it sufficient, as the court has already considered, that Handwerker claims she had fully complied *after* the deadline and prior to AT & T's filing its motions. *See id.* at 210.

## ORDER

Accordingly, it is hereby

**ORDERED** that Handwerker's motion for reargument or reconsideration is DENIED.

**SO ORDERED.**